UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Crim. Case No.: 15-cr-252 (PKC) |
| v. | |
| HERNAN LOPEZ, *et. al.*, | |
| Defendants. | |

**DEFENDANT FULL PLAY GROUP'S RESPONSE JOINING IN CO-DEFENDANTS' MOTION FOR SEVERANCE**

**NORTON ROSE FULBRIGHT US LLP**
Carlos F. Ortiz
Mayling C. Blanco
Katey L. Fardelmann
1301 Avenue of the Americas
New York, New York 10019
Tel.: (212) 318-3000

*Attorneys for Defendant Full Play Group S.A.*

Defendant Full Play Group S.A. ("FPG") respectfully joins, by way of this response, in the Motion for Severance filed by Defendants Hernan Lopez and Carlos Martinez pursuant to Federal Rules of Criminal Procedure 14(a) (the "Lopez & Martinez Motion") on the grounds of inevitable prejudicial spillover from Lopez's and Martinez's defense, effectively creating a second set of prosecutors against FPG, echoing the government's allegations, while trying to distance themselves.

Since FPG is the only other defendant in the TSI, the Lopez & Martinez Motion is in effect a severance on behalf of FPG and, for that reason, FPG joins and adopts the arguments in their motion pursuant to Federal Rules of Criminal Procedure 8(b).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On March 18, 2020, the government filed a third superseding indictment ("TSI") against Defendants FPG, Lopez, and Martinez.  Count One, which subsumes the remainder of the TSI, charges FPG and other co-defendants with allegedly engaging in a racketeering conspiracy (a charge FPG vigorously denies).  Defendants Lopez and Martinez are not charged in Count One along with the other defendants.  The TSI also contains an additional fifty-two counts involving approximately a dozen alleged schemes.  FPG is implicated in four of these schemes, meanwhile, Lopez and Martinez are only referenced in one scheme: the Copa Libertadores Scheme #2.

On July 6, 2020, Defendants Lopez and Martinez filed the Lopez & Martinez Motion arguing that the government violated Federal Rule of Criminal Procedure 8(b) by charging them with similar but unrelated offenses to the other defendants in the TSI.  They also contend that severance is necessary under Federal Rule of Criminal Procedure 14 "to avoid substantial risk of spillover prejudice."  FPG joins the Lopez & Martinez Motion under Federal Rule of Criminal Procedure 14(a). The underlying theme of the Lopez & Martinez Motion is that FPG and the other

co-defendants are the true targets of the government's prosecution. Consequently, the majority of charges in the TSI "have no factual connection" to Lopez and Martinez and, should this case result in a joint trial, the evidence would implicate the only remaining defendant, FPG. It is apparent from their motion that defense counsel for Lopez and Martinez will highlight over the course of a multi-week joint trial the absence of their clients from the proffered evidence in comparison to the only other defendant in the courtroom, FPG. There will be an inevitable prosecutorial echo-chamber in which, to defend their clients effectively, Lopez's and Martinez's counsel will be forced to remind the jury over and over again that the government's allegations only implicate FPG and not their clients. Conversely, our client should not be forced to suffer the heavy burden of defending against both the government and Defendants Lopez's and Martinez's constant reminders, not to mention the remaining eight schemes associated with the RICO allegation that our client will be forced to defend, although they are not charged in any substantive counts relating to them. In order to protect its constitutional right to a fair trial and prevent the substantial risk of what is in effect a double prosecution, FPG joins Defendants Lopez and Martinez in requesting severance under Federal Rule of Criminal Procedure 14.

## II.   RELEVANT BACKGROUND FACTS

The TSI charges 17 defendants and various co-conspirators in almost a dozen different conspiracies allegedly involving international schemes to pay kickbacks and bribes to various soccer officials and executives. Among the named defendants are FPG, Lopez, and Martinez. The Lopez & Martinez Motion pursuant to Federal Rules of Criminal Procedure 8(b), 14(a) and 7(d) (Dkt. No. 1408) argues that "[i]n the government's broad-reaching, decades-spanning, 12-scheme, 17-defendant, 53-count indictment, Mr. Lopez and Mr. Martinez allegedly played a minimal role (though in truth, they played no role at all.)" (*Id.* at 6). The government "has corralled all of the

named defendants into [the RICO] count – all, that is, except Mr. Lopez and Mr. Martinez." (*Id.* at 3). The motion also notes that there is "no other factual connection" between the Counts implicating Lopez and Martinez and the other counts involving our client. In particular, Lopez and Martinez underscore that:

- "Counts 27-28, which encompass the CONMEBOL World Cup Qualifiers/Friendlies Scheme, allege that the Full Play defendants conspired with defendant Luis Chiriboga and others to obtain for Full Play the rights to certain World Cup qualifying matches and friendlies among CONMEBOL national teams. (TSI ¶ 79.) These counts also have no connection to Mr. Lopez or Mr. Martinez." (*Id.* at 7).

- "In Counts 29-36, based on the Copa America Scheme, the Full Play defendants and the same CONMEBOL officials charged in Counts 9 through 21 are alleged to have conspired to obtain media and marketing rights to the Copa America tournament—which, unlike the Copa Libertadores, involves national teams, not private club teams—for a company called Datisa S.A. . . . There is nothing in these counts that implicates either Mr. Lopez or Mr. Martinez." (*Id.* at 7). Lopez and Martinez also write that "the Copa America 2013 Scheme alleges that Burzaco, Jose Hawilla, and the Full Play defendants paid CONMEBOL officials bribes in exchange for awarding the media and marketing rights to the 2013 Copa America to a company called Datisa S.A. The schemes involved different

tournaments, different media partners, and different wires, and there is no allegation in the TSI that either Mr. Lopez or Mr. Martinez was even aware of the Copa America 2013 Scheme's existence." (*Id.* at 11).

The Lopez & Martinez Motion underscores that a joint trial will force counsel to show how each piece of RICO-related evidence implicates FPG (the only other defendant at trial), but does not involve Lopez and Martinez. (*Id.* at 16-17). It should also be noted that during the initial trial, there was no evidence presented that established any connection whatsoever between Defendants Lopez and Martinez and FPG. *See United States v. Webb*, No. 15-cr-00252 (PKC) (E.D.N.Y., filed May 20, 2015). Even though the three defendants will be facing a jury together, there does not appear to be any allegation nor was any evidence presented at the first trial, that they conspired with each other or had reasonable foreseeability of each other's alleged illegal conduct.

## III. ARGUMENT

### A. Severance Should Be Granted under Federal Rules of Criminal Procedure 14 Because of the Substantial Risk of Double Prosecution

Severance of the defendants is warranted because a joint trial of the defendants in this case would cause substantial prejudice to FPG and deny FPG its constitutional right to a fair trial. Rule 14(a) of the Federal Rules of Criminal Procedure permits a district court to grant severance of defendants, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). A district court should grant severance "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *United States v.*

*Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1987) (requiring a showing that a joint trial would result in substantial prejudice to the defendant to warrant severance).

Whether a serious risk of prejudice exists to warrant severance must be evaluated on a case-by-case basis and courts have "almost unlimited discretion under Rule 14" to determine whether severance is appropriate. *Gallo*, 668 F. Supp. at 748; *see also United States v. Nordlicht*, No. 16-CR-00640 (BMC), 2018 WL 1796542, at *2 (E.D.N.Y. Apr. 16, 2018). District courts consider the following factors in making a determination under Rule 14: (i) the number of defendants and counts; (ii) the complexity of the indictment; (iii) the estimated length of trial; (iv) disparities in the amount or type of proof offered against the defendants; (v) disparities in the degrees of involvement by defendants in the overall scheme; (vi) possible conflict between defense theories and strategies; (vii) potential prejudice from evidence admitted against co-defendants but which is inadmissible or excluded as to a particular defendant; and (viii) potential prejudice if exculpatory evidence were unavailable in a joint trial, but would have been available to a defendant tried alone. *See Gallo*, 668 F.Supp. at 749; *United States v. Guillen-Rivas*, 950 F. Supp. 2d 446, 457 (E.D.N.Y. 2013); *United States v. Santiago*, 174 F.Supp.2d 16, 22 (S.D.N.Y. 2001). However, these factors are not dispositive and "there are no precise tests applicable to one or a combination of these factors that can provide a foolproof resolution under Rule 14." *Gallo*, 668 F. Supp. at 749. Rather, the court "must decide whether the jury would be 'reasonably able' to consider the evidence as to each defendant separately". *Id.*[1]

---

[1] Defendants Lopez and Martinez make arguments under several of these factors: the TSI is large and complex, with multiple defendants, but the scheme as alleged against Lopez and Martinez is simple and discrete (i and ii); a joint trial will be lengthy because of the RICO count and the 12 schemes, but a trial against Lopez and Martinez alone would be much shorter (iii); and there is a huge disparity in evidence and in the degrees of involvement by each defendant creating significant prejudicial spillover (iv, v, and vii). (*see* Dkt. No. 1408 at 14-17).

Trying FPG together with Defendants Lopez and Martinez places an "unfair and heavy burden" on FPG, who will be forced at a joint trial to defend itself against what will be, in effect, prosecution from both the government and its co-defendants. Federal courts, including the Eastern District of New York, grant severance when a defendant is forced to wage defenses on two fronts in a single trial: one against the government and the other against co-defendants who "act as a second prosecutor". *See United States v. Shkreli*, 260 F. Supp. 3d 247, 257 (E.D.N.Y. 2017) (granting severance to defendant because there existed a serious risk of double prosecution); *see also United States v. Nordlicht*, No. 16-CR-00640 (BMC), 2018 WL 1796542, at *2 (E.D.N.Y. Apr. 16, 2018) (severing defendants because the defense strategy of one defendant would necessarily subject the other defendants to "double prosecution"). The Court in *Nordlicht* recognized that "some degree of 'finger-pointing' is expected in multi-defendant cases and is tolerable." 2018 WL 1796543, at *2. However, where co-defendants' counsel intends to present the jury with evidence allegedly incriminating another defendant and then points out their client's absence from said evidence, as was attempted in *Nordlich*, such a defense "presents a situation that is an order of magnitude more severe than routine accusations and blame-shifting between co-defendants." *Id*. Such circumstances, referred to by the courts as "double prosecution", heavily burdens the defendant and "rise[s] to the level of a 'legally cognizable prejudice' threatening [the defendant's] right to a fair trial, and warranting severance." *Id.* at *2-3.

The risk of a "double prosecution" is plain in this matter. Here the sheer volume and complexity of the allegations against FPG, especially the RICO charge, versus the essentially sole allegation against Martinez and Lopez, forces Martinez and Lopez to constantly point to the absence of evidence against them to convince the jury that their competitors, including FPG,

engaged in illegal conduct. For the jury to hear these allegations against FPG from their co-defendants, as well as the government, over a multi-week trial is simply unfair.

The double prosecution risk is not mere speculation. In the Lopez & Martinez Motion, their counsel set forth that their defense strategy in a joint trial would be, in part, to highlight their client's absence from the "surfeit of evidence" offered by the government while underscoring how this evidence allegedly implicates FPG and the other co-defendants charged in the TSI. Their motion points out that Lopez and Martinez allegedly played only a minimal role in the charged offenses (Dkt. 1408 at 7), in alleged contrast to FPG, and expresses concern that a joint trial will force counsel to show how each piece of RICO-related evidence and evidence related to the balance of the schemes they are not charged with involve the other co-conspirators and not them. (*Id.* at 16-17).

As in *Nordlicht*, such trial conditions "presents a situation that is an order of magnitude more severe than routine accusations and blame-shifting between co-defendants." By juxtaposing themselves with FPG, at a joint trial, Lopez and Martinez will, as noted, serve as an "echo-chamber" for the prosecution by reasserting how every piece of evidence implicates FPG, the only other defendant at trial, rather than Lopez and Martinez. This situation will only serve to bolster the government's prosecution and compel FPG to wage a defense on two fronts: against the government as well as Lopez and Martinez. The risk of unnecessary "double prosecution" is so significant that the jury's ability to reasonably consider the evidence as to each defendant separately will be effected and the jury will be unable to make "a reliable judgment about the guilt or innocence" of FPG. *Zafiro*, 506 U.S. at 539. At some point, curative instructions, such as how certain evidence may only be considered for a certain purpose or against a certain defendant, may be drowned out by a chorus of voices assenting to a lack of knowledge of Lopez and Martinez or

their related entities and schemes. There will simply be greater prejudice to FPG because of the number of schemes in which they are charged. Indeed, days will surely pass without any significant mention of Lopez and Martinez, while the jury hears about FPG, enabling Lopez's and Martinez's counsel to highlight that point. This heavy burden denies FPG its constitutional right to a fair trial and rises to the level of "legally cognizable prejudice." Under these circumstances "judicial economy must give way to fairness" and FPG's motion for severance should be granted.

### B. Given the Minimal Overlap in Evidence, Severed Trials Will Increase Judicial Economy and Streamline Each Trial

A severance in this case will lead to greater judicial economy by minimizing the burdens placed on the court related to evidential rulings and curative instructions during trial as well as streamline each case due to the minimal overlap in evidence between FPG and Lopez and Martinez. There are no allegations that FPG or the other two defendants conspired with each other or had any reasonable foreseeability regarding each other's purported roles, even with regards to the single scheme they have in common: Copa Libertadores Scheme #2. As also noted above, it seems that there would be very little overlap in evidence regarding the three defendants in this trial and thus, judicial economy favors severance.

In cases involving the risk of "double prosecution," such as this, courts in the EDNY find that the benefits of not severing are actually outweighed by the additional burdens placed on the court. The court in both *Shkreli* and *Nordlicht* found that cases involving double prosecution lead to frequent objections and side bars that seriously disrupt trial and add a level of complexity to an already challenging case (thereby increasing jury confusion and further jeopardizing the defendant's right to a fair trial). *See* 260 F. Supp. 3d at 257 (granting severance); 2018 WL 1796543, at *3 (granting severance). The additional level of complexity also makes lesser steps, such as a curative instruction to the jury, ineffective. In particular, double prosecution creates a

type of inescapable trial prejudice for FPG that is fundamental in nature and cannot be ameliorated by jury instructions. *See Shkreli*, 260 F. Supp. 3d at 256. These challenges are only heightened in this case given the significant complexity of the charges against FPG versus Lopez and Martinez as well as the peculiarities of the defendants – one being a foreign corporate defendant and the others being individuals associated with business entirely unrelated to our client. For example, certain evidence may be relevant for only some charges and be considered in only certain respects against FPG, a foreign corporate entity, for which neither Lopez nor Martinez is alleged to have acted on behalf or as an agent of at any point in time. This will burden and lengthen the trial with frequent interruptions for objections, prolonged sidebars regarding the evidence, and multiple limiting instructions.

While in most cases these factors may be counterbalanced by an overlap of witnesses and other evidence that would need to be re-presented at a second trial, that is simply not the case here. In fact, due to the minimal overlap of alleged misconduct -- FPG charged in four alleged schemes while the individual defendants are charged in only one and, of course, the individual defendants are not charged in the RICO conspiracy -- the witnesses and documentary evidence the three defendants have in common is minute, to the extent it exists at all. Again, one can imagine that in a joint trial a significant number of witnesses presented to establish the RICO conspiracy and the schemes in which FPG is alleged to have been involved will fail to implicate either Lopez or Martinez. For each of those witnesses who will testify over the course of multiple weeks, counsel for Lopez and Martinez are entitled to cross-examine each one to establish the witnesses' lack of knowledge of Lopez and Martinez. Similarly, FPG would be entitled to do the same with witnesses testifying to the alleged conduct of Lopez and Martinez, none of whom implicate FPG. Each of these incidences will present opportunities for relevance and other objections from co-defendants'

counsel and increase the need for further curative instructions, not to mention the prejudicial spillover created by evidence admissible against one defendant but not others.

Finally, separate trials will not unreasonably inconvenience witnesses, since most (other than perhaps some common government agents) will likely not be called in both cases. Consequently, not only does severance not create significant additional burdens, any benefits of trying Lopez, Martinez, and FPG together are outweighed by the heightened burdens of a joint trial. These circumstances favor severing the defendants in this case.

### IV.   CONCLUSION

For the foregoing reasons, FPG respectfully requests that the Court grant its Motion for Severance of Defendants.

| | |
|---|---|
| Dated: New York, New York<br>July 24, 2020 | NORTON ROSE FULBRIGHT US LLP<br><br>By: _/s/ Carlos F. Ortiz_____<br>   Carlos F. Ortiz<br>   Mayling C. Blanco<br>   Katey L. Fardelmann<br>   1301 Avenue of the Americas<br>   New York, NY  10103<br>   Tel. (212) 318-3000<br>   Fax (212) 318-3400<br>   carlos.ortiz@nortonrosefulbright.com<br>   mayling.blanco@nortonrosefulbright.com<br>   katey.fardelmann@nortonrosefulbright.com<br><br>   *Attorneys for Defendants Full Play Group S.A.* |

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 24th day of July, I electronically filed the foregoing with the Clerk of Court for the United States District for the Eastern District of New York by using the CM/ECF system, which will electronically notify all participants in this case.

                                                   */s/ Carlos F. Ortiz*

                                                   Carlos F. Ortiz