SPN/MKM/KDE/PTH/KTF
F. #2015R00747

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                       Docket No. 15-CR-252 (S-3) (PKC)

FULL PLAY GROUP, SA,
HERNAN LOPEZ and
CARLOS MARTINEZ,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X


### THE GOVERNMENT'S MEMORANDUM OF LAW IN
### OPPOSITION TO DEFENDANTS' MOTIONS FOR SEVERANCE


SETH D. DuCHARME
ACTING UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


Samuel P. Nitze
M. Kristin Mace
Keith D. Edelman
Patrick T. Hein
Kaitlin T. Farrell
Assistant U.S. Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the motion for severance filed by defendants Hernan Lopez and Carlos Martinez and subsequently joined by corporate defendant Full Play Group, SA ("Full Play").  Lopez, Martinez, Full Play, and several co-defendants not presently before the Court are charged by superseding indictment with wire fraud conspiracy, multiple counts of substantive wire fraud, and money laundering conspiracy in connection with their participation in a years-long scheme involving the payment of millions of dollars in bribes to obtain lucrative media and marketing rights to the Copa Libertadores, a professional club-team tournament based in South America, and other events.  See United States v. Full Play Group, SA, et al., 15-CR-252 (PKC) (S-3) (ECF Dkt. No. 1337) (the "Indictment" or "Ind.") at ¶¶ 70-74, 129-35 (describing Copa Libertadores bribery scheme involving Lopez, Martinez, and Full Play, among others (the "Copa Libertadores Scheme")).  The Indictment also includes charges against Full Play and other defendants in which Lopez and Martinez are not charged, including a racketeering ("RICO") conspiracy count.  Ind. ¶¶ 114-15.

By motion dated July 6, 2020, Lopez and Martinez seek an order (1) severing them from Full Play for an entirely separate trial, or, in the alternative, severing the counts in which they are not named, and (2) a derivative request to strike from the Indictment the language in any severed counts as surplusage.  (ECF Dkt. No. 1408 (hereafter "Mot." or "Motion")).  Full Play joined in the Motion by way of a response filed on July 24, 2020, to the extent Lopez and Martinez are seeking severance from Full Play.  ECF Dkt. No. 1423 ("FP Mot.").  Martinez and Lopez seek severance from Full Play – and Full Play from Martinez and Lopez – notwithstanding that Full Play is charged as a co-defendant in every

1

one of the 13 counts in which Lopez and Martinez are named as defendants and that evidence of those offenses will overlap substantially with evidence of the other charges in which Full Play is named.  The law strongly favors joint trials of defendants who are indicted together to avoid the inefficiency and waste of resources invited by the defendants.  Moreover, the defendants have not identified any realistic prospect that their trial rights would be prejudiced by a joint trial.

Accordingly, and for the reasons set forth below, the Court should deny the defendants' motions in their entirety without prejudice to renewal closer to trial (1) to the limited extent the motion seeks to sever defendants not before the Court, or counts in which none of the three defendants currently before the Court are charged, and (2) to strike surplus language relating to later-severed defendants and counts.

## BACKGROUND

On May 20, 2015, a grand jury in the Eastern District of New York returned a 47-count indictment charging 14 individuals with a range of offenses related to corruption in the world of organized soccer, including racketeering conspiracy, substantive and conspiratorial wire fraud and money laundering, and tax and naturalization offenses.  ECF Dkt. No. 1.  On November 25, 2015, the grand jury returned a 92-count first superseding indictment charging 16 additional defendants.   ECF Dkt. No. 102.  In late 2016 and early 2017, the five defendants before the Court who had not pleaded guilty each moved to sever his case from the other four defendants.  ECF Dkt. Nos. 462 (Juan Ángel Napout), 529-30 (José Maria Marin), 531-33 (Costas Takkas), 534 (Hector Trujillo), and 541 (Manuel Burga). The government opposed the motions and the Court held oral argument on April 6, 2017. ECF Dkt. No. 546, 04/06/2017 ("Transcript dated April 6, 2017").  On May 22, 2017, the

Court issued an order denying all five motions.  ECF Dkt. No. 593 ("2017 Severance

Order").  On June 14, 2017, following the guilty pleas of Takkas and Trujillo, and in

anticipation of the trial, the grand jury returned a seven-count second superseding indictment

against Napout, Burga, and Marin, which omitted the charges and allegations against the

defendants who would not be at trial.  ECF Dkt. No. 604.  The case proceeded to trial in

November 2017 resulting in the convictions of Napout and Marin (the "2017 Trial").

On March 18, 2020, the grand jury returned a 53-count, third superseding

indictment.  ECF Dkt. No. 1337 (the "Indictment").  The Indictment charges 17 defendants

(including four additional defendants charged for the first time) with the same offenses

alleged in the earlier indictments.  Three of the charged defendants – Full Play, Lopez, and

Martinez – have been arraigned on the Indictment and are currently before the Court pending

trial.  With the exception of one defendant, the remaining fourteen defendants were all

charged in the underlying indictments but remain overseas and have not yet come within the

jurisdiction of the Court.[1]

Consistent with previous indictments returned in this case, the Indictment

alleges a decades-long RICO conspiracy among soccer officials, sports marketing executives,

---

[1] Some of these fourteen defendants are subject to extradition proceedings, others not.
For instance, the defendant Jack Warner has been fighting extradition from Trinidad &
Tobago since having been charged in the original indictment in May 2015.  By contrast, the
defendants Marco Polo Del Nero and Ricardo Teixeira, both Brazilian nationals who were
indicted in the first superseding indictment, are not subject to extradition from their home
country.  See Art. VII, Treaty of Extradition Between the United States of America and the
United States of Brazil, dated January 13, 1961 (providing that there is "no obligation upon
the requested State to grant the extradition of a person who is a national of the requested
State").  Defendant Gerard Romy was charged for the first time is the Indictment but remains
a fugitive overseas.

and intermediaries to corrupt an association-in-fact enterprise comprising the Fédération Internationale de Football Association ("FIFA") and its constituent continental and regional confederations and national associations, which together organized and regulated the sport of soccer around the world, as well as various sports marketing companies that commercialize the sport. The conspirators corrupted the enterprise through, among other things, the solicitation, offer, payment, and receipt of bribes and kickbacks, thus depriving FIFA and its constituent confederations and associations of the right to the honest services of their officials.

The Indictment, like the previous indictments, also alleges various fraudulent schemes and related wire fraud and money laundering offenses, among others, both as predicate racketeering activity in support of the RICO conspiracy alleged in Count One and as stand-alone crimes. Full Play, for example, is charged with the racketeering conspiracy alleged in Count One and with predicate wire fraud and money laundering offenses relating to its involvement in schemes to pay bribes and kickbacks to, among others, officials of CONMEBOL, the confederation governing soccer in South America. Specifically, Full Play is charged along with various co-defendants for its involvement in schemes involving the payment of bribes to secure media and marketing rights to (1) the Copa Libertadores, a prominent annual men's club team tournament in South America, and other club tournaments and events in the region (Counts 9-21 (the "Copa Libertadores Counts")); (2) the Copa América, a quadrennial national-team tournament organized by CONMEBOL (Counts 29-36 (the "Copa América Counts")); and (3) various World Cup qualifier and "friendly" matches played by national teams associated with CONMEBOL's member soccer federations (Counts 27-28 (the "Qualifier/Friendly Counts")).

Lopez and Martinez are charged together with Full Play and others in all of the Copa Libertadores Counts, which are based on the same Copa Libertadores Scheme that was alleged in each of the earlier indictments and proved in the 2017 Trial.  The evidence in the upcoming trial will establish, as it did during the 2017 Trial, that Full Play served as an intermediary in the Copa Libertadores Scheme, which was designed to funnel millions of dollars in bribes funded by Fox and its partner, Argentine sports marketing and production company Torneos y Competencias, SA ("Torneos"), to numerous CONMEBOL officials in exchange for the lucrative broadcasting rights to the Copa Libertadores and other events. The evidence will further establish that Lopez and Martinez, formerly high-ranking executives of Fox subsidiaries responsible for developing and carrying out Fox's sports broadcasting businesses in Latin America, joined Full Play and other conspirators in the years-long scheme.  Lopez and Martinez relied on support secured through the payment of these bribes to advance related business interests of Fox, including to obtain confidential bidding information relating to the sale of rights to broadcast the 2018 and 2022 World Cup tournaments in the United States, rights that Fox successfully obtained.  The Copa Libertadores Counts include substantive wire fraud offenses relating to transfers of funds from Fox businesses in the United States in support of the Copa Libertadores Scheme.

<u>ARGUMENT</u>

Defendants Lopez and Martinez argue that they should be severed from Full Play – and the 14 other defendants charged in the Indictment – and be permitted to stand trial on the Copa Libertadores Counts alone, and that Full Play should be tried separately on the very same counts and the other counts in which it is charged.  The crux of their argument is that their joinder with other defendants, and the joinder of the Copa Libertadores Counts with

other charges in the Indictment, was improper because the RICO count "encompasses 12 separate and free-standing schemes," the Copa Libertadores Scheme is "unrelated to the broader RICO" conspiracy, and, other than shared defendants, the Copa Libertadores Counts have "no other factual connection" with the other charges in the Indictment.  Mot. at 4, 6. Lopez and Martinez argue further that a joint trial with Full Play will cause them unfair prejudice by exposing the jury to evidence admissible only as to Full Play but not as to them. Mot. at 15.  Full Play, in turn, argues that it will be prejudiced by defense arguments from Lopez and Martinez painting Full Play as the "true target" of the prosecution.  FP Mot. at 3.

Each of these arguments is meritless.  As is clear from the allegations set forth in the Indictment, and clearer still from the record of the 2017 Trial, the Copa Libertadores Counts are a component part of the RICO conspiracy charged in Count One and involve defendants, relationships, governance structures, commercial activity, and criminal conduct that overlap and is inextricably intertwined with the factual context and conduct at issue in many of the other charges in the Indictment, including all of those in which Full Play is named.  Severing the Copa Libertadores Counts, and severing Full Play even as to those counts, would cause enormous inefficiencies in the resolution of this prosecution, wasting time and resources of the government, the Court, witnesses, and jurors, among others. Conversely, a joint trial of Lopez, Martinez, and Full Play would provide precisely the sort of efficiency and conservation of judicial and related resources the joinder rules were designed to encourage, all while posing minimal, if any, risk of prejudice—a risk that, to the extent it exists, can be easily mitigated through orderly presentation of evidence and instructions from the Court.

Accordingly, the motions should be denied.

I.      Legal Standards for Joinder and Severance

Rule 8(a) of the Federal Rules of Criminal Procedure governs the joinder of offenses, whereas Rule 8(b) governs the joinder of defendants.  Where, as here, the joinder involves both multiple offenses and multiple defendants, Rule 8(b) must be applied.  United States v. Turoff, 853 F.2d 1037, 1043 (2d Cir. 1988).  Rule 8(b) provides that two or more defendants may be joined in a single indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b).  The Second Circuit has "interpreted the 'same series of acts or transactions' language of Rule 8(b) to mean that joinder is proper where two or more persons' criminal acts are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." United States v. Rittweger, 524 F.3d 171, 177 (2d Cir. 2008) (some internal quotation marks omitted).  In this context, courts "apply a commonsense rule to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinder." United States v. Shellef, 507 F.3d 82, 98 (2d Cir. 2007) (internal quotation marks omitted).  Rule 8(b) is satisfied by either a "substantial identity of facts or participants" or "a common plan or scheme"; it does not require both.  Rittweger, 524 F.3d at 177.  "Under this rule [8(b)], 'a non-frivolous conspiracy charge' is generally sufficient to support joinder." 2017 Severance Order (ECF Dkt. No. 593) at 5 (quoting United States v. Nerlinger, 862 F.2d 967, 973 (2d Cir. 1988)).

If joinder is proper, a defendant may move pursuant to Federal Rule of Criminal Procedure 14(a) for severance where a joint trial would prejudice a defendant.  Id.

(citing Fed. R. Crim. P. 14(a); United States v. Spinelli, 352 F.3d 48, 54 (2d Cir. 2003)). "Given the 'preference in the federal system for joint trials of defendants who are indicted together,' a severance should be granted only where 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" Id. at 5-6 (quoting Zafiro v. United States, 506 U.S. 534, 537-39 (1993); and citing United States v. Ventura, 724 F.2d 305, 312 (2d Cir. 1983) ("We have held repeatedly that, absent a showing of substantial prejudice, defendants who are jointly indicted should be jointly tried.")); United States v. Page, 657 F.3d 126, 129 (2d Cir. 2011) ("[T]he defendant [must] demonstrate[] that the failure to sever [would] cause[] him substantial prejudice in the form of a miscarriage of justice.")). "In addition, even where a defendant shows a risk of prejudice, 'less drastic measures' than severance, 'such as limiting instructions, often will suffice to cure any risk of prejudice.'" Id. at 6 (quoting Zafiro, 506 U.S. at 539); see also United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003) (even where the risk of prejudice is high, "less drastic measures—such as limiting instructions—often suffice as an alternative to granting a Rule 14 severance motion").

A properly joined defendant seeking severance thus carries a heavy burden of showing that joinder will result in "substantial prejudice" to his right to a fair trial. United States v. Amato, 15 F.3d 230, 237 (2d Cir. 1994) (internal quotation marks omitted); see also United States v. Cardascia, 951 F.2d 474, 482 (2d Cir. 1991) ("The defendant must establish prejudice so great as to deny him a fair trial."); United States v. Ventura, 724 F.2d 305, 312 (2d Cir. 1983) ("We have held repeatedly that, absent a showing of substantial prejudice, defendants who are jointly indicted should be jointly tried."). In addition, a defendant

seeking severance must show that "the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." United States v. Lanza, 790 F.2d 1015, 1019 (2d Cir. 1986) (internal quotation marks omitted). Such a showing is difficult to make because the "risks of prejudice attendant in a joint trial are presumptively outweighed by the conservation of time, money, and scarce judicial resources that a joint trial permits." United States v. Jimenez, 824 F. Supp. 351, 366 (S.D.N.Y. 1993).

The decision whether to grant a motion for severance is committed to the sound discretion of the trial judge and will not be disturbed on appeal absent a showing that a defendant was substantially prejudiced by a joint trial. See United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989); United States v. Stirling, 571 F.2d 708, 733 (2d Cir. 1978) (absent misjoinder, a severance motion is committed to the discretion of the trial court and is "virtually unreviewable" (quoting 8 James Wm. Moore et al., Moore's Federal Practice ¶ 14.02(1), at 14-3 (2d ed. 1977))).

II.    Analysis

The defendants' severance motions rest on two foundational propositions: First, the defendants contend that the Copa Libertadores Counts share no factual overlap, other than common defendants, with the other charges in the Indictment; and second, Lopez and Martinez argue that a joint trial will cause unfair "spillover" prejudice by tainting them with racketeering evidence admissible only as to Full Play, who, in turn, argues that it will be prejudiced by exposure to arguments that it is a more culpable defendant. Neither proposition is supported by the charging language set forth in the Indictment, the factual record of this case, or the law applicable to joinder and severance.

A.      Lopez and Martinez Were Properly Joined With Full Play

As a threshold matter, to the extent Lopez and Martinez seek severance from Full Play even as to the Copa Libertadores Counts, in which Lopez, Martinez, and Full Play are charged together as co-defendants, the motion is frivolous.  As to those counts, the defendants are charged with their involvement in the very same criminal conduct, including multiple "non-frivolous conspiracy charge[s]."  See 2017 Severance Order (ECF Dkt. No. 593) at 5 ("Under this rule [8(b)], 'a non-frivolous conspiracy charge' is generally sufficient to support joinder.") (quoting Nerlinger, 862 F.2d at 973).  This alone is a sufficient basis for the Court to reject the defendants' motion for an entirely separate trial.

The defendants' further contention that the Copa Libertadores Counts and the scheme alleged therein are insufficiently related to the RICO count and other counts in the indictment to permit joinder also fails.  First, and most obviously, the Copa Libertadores Scheme is a component part of the RICO count, in that the wire fraud and money laundering offenses committed in connection with the Copa Libertadores Scheme are alleged as predicate criminal activity the conspirators agreed to commit in furtherance of the RICO conspiracy.  See United States v. Weisman, 624 F.2d 1118, 1129 (2d Cir. 1980) (in multi-defendant, multi-count case, defendant who was charged with bankruptcy fraud but was not named as a defendant in RICO count was properly joined where pattern of racketeering activity alleged in the indictment included the predicate act of bankruptcy fraud with which the defendant was charged); United States v. Garcia, 848 F.2d 1324, 1333 (2d Cir. 1988), rev'd on other grounds, Gomez v. United States, 490 U.S. 858 (1989) ("[A]ll of the counts in the indictment concerning the non-RICO appellants were charged also in the RICO count as predicate racketeering acts against [other defendants].  Joinder of these defendants in the

10

same indictment was therefore proper under Fed. R. Crim. P. 8(b), even though multiple conspiracies were charged and even though some defendants were not named in all the conspiracy counts, which also constituted RICO predicate offenses, or in the overarching RICO count."); see also Rittweger, 524 F.3d at 177 (joinder of defendants charged with separate securities fraud and wire fraud conspiracies permissible where the indictment alleged that the two conspiracies shared a common plan to induce investment in a Ponzi scheme, and the conspiracies had some common defendants); cf. Feyrer, 333 F.3d at 114 (upholding joinder of co-defendants although neither party was charged in the conspiracy counts of the other).

Second, the two schemes share common defendants – indeed, with the exception of Lopez and Martinez, every defendant charged in the Copa Libertadores Counts is also a defendant in the RICO conspiracy count.  See, e.g., United States v. Cervone, 907 F.2d 332, 341 (2d Cir. 1990) (affirming denial of severance motion by defendant who was the lone defendant charged in the two counts naming him, was not charged in the RICO conspiracy count, and was the only defendant of 18 indicted together that was not charged jointly in any count with a defendant named in the RICO count).

Third, there is substantial overlap in the facts underlying the Copa Libertadores Counts, the RICO count, and other charges in the Indictment, particularly as to those counts in which Full Play is named as a defendant.  See United States v. Attanasio, 870 F.2d 809, 815 (2d Cir. 1989) (upholding joinder of defendants involved in separate conspiracies on the grounds that the conspiracies shared a common purpose and there was "an overlap of participants and acts"); Turoff, 853 F.2d at 1044 (holding joinder of offenses proper where one offense "stemmed from the other" and "the proof of one scheme [was]

11

indispensable for a full understanding of the other"); cf. Rittweger, 524 F.3d at 177 (upholding joinder of defendants involved in separate conspiracies even where, unlike here, the connection between the two charged conspiracies was "tenuous" in that they involved some common defendants and similar modus operandi but otherwise did not have substantially overlapping facts).  To give just a few examples, the Copa Libertadores Counts and all of the counts in which Full Play is named involve (1) the payment of bribes to secure media and marketing rights to soccer tournaments or events organized by FIFA or its constituent confederations; (2) the theft of honest services in violation of fiduciary duties established through, among other things, FIFA's and CONMEBOL's code of ethics; (3) Full Play's role as either a facilitator or direct payor of bribes to soccer officials; (4) the tracking of bribe payments in a ledger maintained by a Full Play executive; and (5) bank accounts maintained by Full Play in the United States and elsewhere.

　　　　Finally, the evidence the government intends to adduce to establish the RICO count overlaps substantially with the evidence it will adduce to prove the Copa Libertadores Counts.  This is clear from the overlap in facts alleged in the Indictment, including, among other things, the common defendants, victims, duties, and methods and means of criminal conduct.  The Court, however, need not rely on the allegations alone, because it presided over the 2017 Trial during which the very same RICO count and the very same wire fraud and money laundering conspiracies alleged in the Copa Libertadores Counts were proven beyond a reasonable doubt to a jury through substantially overlapping evidence.  Indeed, of the 28 witnesses who testified in the 2017 trial, 24 provided evidence relevant to both the

RICO count and Copa Libertadores Counts.[2]  While the government does not here commit to any particular list of witnesses, the record of the 2017 Trial establishes the substantial overlap in proof that is sure to characterize any trial of Lopez, Martinez, and Full Play.

The overlap in proof flowed in part from the interconnected nature of many of the schemes charged as components of the RICO count, particularly with respect to schemes in which Full Play is alleged to have participated.  See, e.g., Trial Tr. 1582-85 (testimony of Luis Bedoya regarding, among other things, ties between Copa Libertadores and Copa America schemes); GX-601 at 8-9 (ledger of bribe payments to Luis Chiriboga, the former president of the Ecuadoran federation, for the Copa América ("CA"), Copa Libertadores ("FOX" and "CL"), friendlies ("Amistosos"), and qualifiers ("Eliminatorias"); see also Trial Tr. 1154 (witness Santiago Peña explained that "FOX" was a reference to the Copa Libertadores bribes).

In support of their argument that a joint trial will result in undue prejudice, Martinez and Lopez overstate the scope of the proof likely to be adduced at the upcoming trial by focusing on the Indictment as a whole, rather that the aspects of the charges that pertain to the defendants before the Court, and they understate the significance of the Copa Libertadores Scheme to the RICO conspiracy.  Martinez and Lopez reference the "17 defendants and many more co-conspirators in 12 different conspiracies involving bribes paid to officials of at least 10 different national and international soccer organizations in 4 global regions on 2 continents over the course of nearly 20 years," refer to the RICO conspiracy as a

---

[2] The remaining witnesses were called in connection with Napout's obstruction of justice, a topic not at issue in the upcoming trial, or the Copa do Brasil scheme involving only the defendants Marin, Teixeira, and Del Nero.

"sprawling saga," and describe the "surfeit of evidence about an enterprise allegedly corrupted by two decades of bribes" and conduct that "occurred as far back as fifteen years ago, with people [Martinez and Lopez] have never spoken to, and by businesses they did not oversee." Mot. at 3-4. The five defendants who previously moved for severance in this case made similar arguments. See Hearing Transcript dated Apr. 6, 2017 at 18 (Court noting that defendants were "similarly claiming that the mountain of evidence will be about some other defendants"); 18-19 (counsel for Marin arguing, "you have the five of us here going to trial and an indictment that's got, you know, all this stuff in there . . . [and] the government wants to put in the evidence of 236 paragraphs [as] to these five gents over here"); 21 (counsel for Burga complaining, the indictment was "an excuse to let in the kitchen sink"); 30 (counsel for Takkas worrying about a trial "based on 38 different schemes over 25 years").

The trial that resulted, after the Court denied severance, did not resemble the sprawling, unwieldy affair the defendants had predicted. Rather, prior to the 2017 Trial, the government obtained a superseding indictment, effectively severing the defendants not before the Court, and the government presented evidence of only the trial defendants' guilt, tailoring its racketeering evidence to those aspects of the conspiracy most relevant to the defendants before the Court. Here too, the government anticipates consenting to severance of – or seeking a superseding trial indictment effectively severing – overseas defendants, and charges related solely to those defendants, and proving at trial only the guilt of the defendants before the Court.[3]

---

[3] To the extent the Motion seeks severance now of defendants not before the Court and offenses in which Full Play is not named as a defendant, the government opposes the Motion as premature, but concedes that severance of some sort is all but certain before trial.

Next, in their effort to brush past the obvious points of overlap among the Copa Libertadores Counts and the additional charges against Full Play, defendants Lopez and Martinez define the Copa Libertadores Scheme too narrowly and at the most granular level of specificity.  For example, they note that T&T Sports Marketing Ltd. – the entity that held the rights to the Copa Libertadores and was originally a joint venture between Traffic Sports and Torneos and, later, Fox and Torneos – was not involved in schemes other than the Copa Libertadores Scheme, and that the wires in the Copa Libertadores Scheme were different from those in other schemes.  Mot. at 10-11.  Differences of this sort exist between most, if not all, distinct offenses, but the joinder rules do not require overlap so tight as to render any distinct offense necessarily severable.

As the Motion concedes, joinder is proper where "proof of one scheme is indispensable for a full understanding of the other," or where "one scheme stemmed from the other, such that one scheme is 'part and parcel' of the other."  Mot. at 8-9.  Here, proof of the Copa Libertadores Counts will not only overlap with proof of the RICO count and the other charges against Full Play, but this evidence will be essential to understanding the RICO conspiracy of which it was a part; and evidence of the RICO conspiracy will likewise be essential to understanding the Copa Libertadores Counts.  Thus, not only should the charges be tried together, see Rittweger, 524 F.3d at 178 (upholding joinder of defendants involved in separate conspiracies even where, unlike here, the connection between the two charged

---

The government also opposes Lopez and Martinez's derivative motion to strike language from the Indictment as similarly premature.  As it did in 2017, when defendants not before the Court are severed, the government will consent to – or seek a superseding indictment effecting – the removal of those portions of the Indictment that address allegations against defendants not before the Court.

conspiracies was "tenuous"); <u>Attanasio</u>, 870 F.2d at 815 (upholding joinder of defendants involved in separate conspiracies on the grounds that the conspiracies shared a common purpose and there was "an overlap of participants and acts"), but much of the evidence of the charges against Full Play will be admissible against Lopez and Martinez as well, and would be even if severance were granted, to "complete the story of the crime[s] on trial."  <u>United States v. Gonzalez</u>, 110 F.3d 936, 941-42 (2d Cir. 1997).[4]

To give just one example, Full Play officer Santiago Peña must be able to explain the complete Full Play bribe ledger, not just the line items related to the Copa Libertadores, as the amounts owed and payed are interspersed and relate to the Copa América, qualifiers, and friendlies.  In other words, because much of the evidence of the Copa Libertadores Scheme is inextricably intertwined with evidence of the other crimes charged against Full Play and the evidence of Full Play's crimes completes the story of the Copa Liberatores Scheme, such evidence is admissible as to each of the three defendants. <u>See, e.g.</u>, <u>Gonzalez</u>, 110 F.3d at 941-42 ("It is well established that 'evidence of uncharged criminal activity is not considered "other crimes" evidence under Rule 404(b) if it "arose out of the same transaction or series of transactions as the charged offense, if it [is] inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete

---

[4] The government is also permitted to elicit other acts evidence from a cooperating witness insofar as those acts constitute impeachment material that the witness may be cross-examined about by the defense.  <u>See</u>, <u>e.g.</u>, <u>United States v. Coonan</u>, 938 F.2d 1553, 1561 (2d Cir. 1991) ("[S]ince the witnesses were participants in the events about which they testified, it was appropriate for the prosecution to elicit testimony during direct examination that exposed details damaging to their credibility.  In this manner, the prosecution was able to avoid the appearance that it was concealing impeachment evidence from the jury.").

the story of the crime [on] trial.'") (quoting <u>United States v. Towne</u>, 870 F.2d 880, 886 (2d. Cir. 1989) (alteration in original)).[5]

Notably, in arguing that they have been improperly joined, the defendants ignore the Court's ruling on the earlier severance motions in this case, and rely on cases that are clearly distinguishable from the instant case.  Mot. at 11-13.  In <u>United States v. Giraldo</u>, 859 F. Supp. 52, 54 (E.D.N.Y. 1994), and <u>United States v. Gentile</u>, 60 F.R.D. 686, 687 (E.D.N.Y. 1973), the court granted severance because – in stark contrast to Lopez, Martinez, and Full Play here – the joined defendants in those cases were not alleged to have participated in conspiracies that shared a common plan and a substantial overlap of facts and participants.  In <u>Giraldo</u>, the court held that joinder was impermissible because, although the government had alleged that all of the drug sales were made to a single cooperating witness, it had not alleged that the two charged conspiracies "shared a common plan," temporally overlapped, or were "unified by a substantial identity of participants."  859 F. Supp. at 54-55.

Similarly, in <u>Gentile</u>, the court granted severance based on its finding that "there is nothing in the indictment which shows that either [of Gentile's two co-defendants] acted in concert with each other, that they participated in a common scheme or plan, or that either of them participated in Gentile's activities concerning his own tax problems."  60 F.R.D. at 689.  Instead, the <u>Gentile</u> court found that the allegations in the indictment and the facts elicited in discovery showed that there were "three separate and distinct" bribery offenses concerning three separate individuals' taxes.  <u>Id.</u>

---

[5] As it did before the 2017 Trial, the government anticipates moving <u>in limine</u> regarding the admissibility of other acts by the defendants and their co-conspirators, including as to the admissibility of evidence of the Copa América Counts and the Qualifier/Friendly Counts as to defendants Lopez and Martinez.

The defendants' citation to the remaining cases likewise ignores that here, the close relationship between the alleged schemes that are component parts of the RICO conspiracy has not only been alleged, but proven.  See, e.g., United States v. Lech, 161 F.R.D. 255, 256-57 (S.D.N.Y. 1995) (granting severance where the government conceded that the three schemes charged in the indictment could not be charged in one overall conspiracy count and Lech "had no involvement in the other schemes charged"); United States v. Kouzmine, 921 F. Supp. 1131, 1133 (S.D.N.Y. 1996) (holding that "there is no colorable argument in this case, as the government acknowledges, that both conspiracies alleged here were part of a single overarching scheme.  Nor is there an identity of participants."); United States v. Ohle, 678 F. Supp. 2d 215, 227 (S.D.N.Y. 2010) (finding that "the similarity between the two conspiracies is marginal" and that "the two conspiracies do not have a common scheme or plan, nor do they share a substantial identity of facts and participants").

In sum, the defendant's conclusory assertion that the Copa Libertadores Counts "are not 'unified by some substantial identify of facts or participants' with other schemes charged in [the Indictment]" is simply wrong.  Mot. at 10 (quoting Cervone, 907 F.,2d at 341).   The law is clear that joinder is proper so long as there is factual overlap or overlap in identity of participants.  See Attanasio, 870 F.2d at 815 (the acts constituting an offense or offenses "must be 'unified by some substantial identity of facts or participants'") (citing United States v. Porter, 821 F.2d 968, 972 (4th Cir. 1987)).  Here, both prongs are clearly satisfied and the Court should find that joinder was proper.

B.     The Defendants Will Not Suffer Any Prejudice Warranting Severance

Lopez, Martinez, and Full Play argue that severance is warranted pursuant to Federal Rule of Criminal Procedure 14(a) because a joint trial would substantially prejudice them and confuse the jury.  Mot. at 15-17; FP Mot. at 5-8.  Specifically, Lopez and Martinez contend that, because they are charged only in the Copa Libertadores Counts and not in the RICO count, they will suffer unfair "spillover prejudice" from the admission of evidence related to Full Play.  And Full Play asserts that it will be prejudiced by "double prosecution" by the government and co-defendants Lopez and Martinez, who will argue that Full Play is the "true target" of the government's investigation.  These arguments are meritless.

Lopez and Martinez fall far short of establishing that they will suffer spillover prejudice at a joint trial.  As an initial matter, Lopez and Martinez rest their prejudice argument in part on the notion that they are minor players in the Copa Libertadores Scheme. Not so.  The evidence will establish that their role was important to the scheme and they were among the primary beneficiaries of the scheme.  In any event, even if the evidence were to show that they were relatively less culpable than others charged in the Indictment, that difference is not a basis for severance given the efficiencies gained from a joint trial.  Indeed, the Second Circuit "has repeatedly recognized that joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible." United States v. Locascio, 6 F.3d 924, 947 (2d Cir. 1993) (collecting cases); see also 2017 Severance Order (ECF Dkt. No. 593) at 10-11 ("the Second Circuit has long recognized that, differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials.") (internal quotation marks and citations omitted); United States v. Carson, 702 F.2d 351, 366–67 (2d Cir. 1983) (affirming

court's denial of severance motion despite the fact that defendant played a less prominent

role in the drug conspiracy charge and stating, "differing levels of culpability and proof are

inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for

separate trials"); United States v. Shkreli et al., 260 F. Supp. 3d 247, 257 (E.D.N.Y. 2017)

("It is well established that defendants who played a minor role in a conspiracy may be tried

with those who played a larger or dominant role. . . . A disparity in the quantity of evidence

and of proof of culpability are inevitable in any multi-defendant trial, and by themselves do

not warrant a severance.") (internal quotation marks and citation omitted).

Moreover, this is not a case in which the nature of the crimes charged against

one defendant is substantially different, or more prejudicial, than that of crimes charged

against others.  This is also not a case where the jury will hear evidence of violence as to one

defendant that might arguably spill over to taint their view of a co-defendant not charged

with such a crime, although such joint trials are commonplace.  See Hearing Transcript dated

Apr. 6, 2017 at 35 (Court noting that severance may be appropriate "where you have [] a

great disparity in the seriousness in the type of crimes that each of the defendants are accused

of committing" as opposed to where "everyone's accused of bribery, money laundering, wire

fraud").  And certainly the admission of evidence of Full Play's participation in the RICO

conspiracy – which includes the Copa Libertadores Scheme in which Lopez and Martinez

played a critical role – would not create a risk of spillover prejudice that would deprive

Lopez and Martinez of their right to a fair trial.  See Nerlinger, 862 F.2d at 974 (holding that

a defendant who claims that there is a risk of prejudicial spillover from a joint trial "bears an

extremely heavy burden"); United States v. Bellomo, 954 F. Supp. 630, 649 (S.D.N.Y. 1997)

(citing Casamento, 887 F.2d at 1149 (holding that a defendant must prove that "prejudice

would be so great as to deprive him of his right to a fair trial.").  Nor is there any basis to argue that the admission of evidence related to the RICO conspiracy would confuse the jury, as Lopez and Martinez contend (Mot. at 16), because, among other things, as described above, much of the evidence against Full Play would come in at a separate trial against Martinez and Lopez.

Full Play's argument that a joint trial with Lopez and Martinez will prejudice "its constitutional right to a fair trial" by forcing Full Play "to defend itself against what will be, in effect, prosecution from both the government and its co-defendants," fares no better. FP Mot. at 5-7.  Indeed, Full Play does not come close to satisfying – and does not cite – the relevant standard for severance based on antagonistic defenses.

That co-defendants tried together may advance defenses that are adversarial to one another "clearly does not, alone, require trials to be severed.  Were this true, a virtual ban on multi-defendant conspiracy trials would ensue since conspirators raise many different and conflicting defenses."  United States v. Cardascia, 951 F.2d 474, 482 (2d Cir. 1992). Similarly, "[m]ere fingerpointing does not require severance."  Casamento, 887 F.2d 1141 (quotations omitted); see also United States v. Serpoosh, 919 F.2d 835, 837 (2d Cir. 1990) ("The mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance.").  Such "finger-pointing" or blame-shifting is unlike the "rare" circumstance where one defendant has made a clear showing that he will put on evidence that is both inconsistent with the government's theory of the case and inculpates the defendant seeking severance, making one defendant a "second prosecutor" of another. United States v. Copeland, 336 F. Supp. 2d 223, 224-25 (E.D.N.Y. 2004) (internal quotation marks omitted).

Relatedly, "[d]efenses are mutually exclusive or irreconcilable if, in order to accept the defense of one defendant, the jury must of necessity convict a second defendant." Cardascia, 951 F.2d at 484.  The Supreme Court has held, however, that even "mutually antagonistic defenses are not prejudicial per se," and that severance is not required when defendants adopt antagonistic defenses "even if prejudice is shown."  Zafiro, 506 U.S. at 538-39.  Rather, when defendants adopt mutually antagonistic defenses, severance is appropriate only if defendants can demonstrate "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Id. at 539.  In Zafiro, severance was not required even though both defendants contended at trial that each had been the innocent dupe of the other.  See 506 U.S. at 539.  The Second Circuit has consistently found that mutually antagonistic defenses do not require severance except in rare circumstances.  See United States v. O'Connor, 650 F.3d 839, 858-59 (2d Cir. 2011); In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93, 132 (2d Cir. 2008); United States v. Diaz, 176 F.3d 52, 103-04 (2d Cir. 1999) (upholding denial of severance for antagonistic defenses when one defendant testified that a second defendant committed a charged murder and a third defendant testified that two defendants had tried to kill him); United States v. Haynes, 16 F.3d 29,  31-32 (2d Cir. 1994) (severance not required even though defendant was implicated by his co-defendant's testimony).

Here, Full Play suggests that Lopez and Martinez are likely to argue that the allegations and evidence are relatively weak as to them, an argument the government rejects but that in any event goes to relative culpability, but are not antagonistic defenses.  FP Mot.

at 8.[6]  Full Play's further argument that Lopez and Martinez will serve, in effect, as a second

set of prosecutors who affirmatively argue that Full Play is guilty as a means of defending

themselves is speculative and conclusory.  Indeed, given their particular roles in the Copa

Libertadores Scheme, with Full Play serving primarily as a facilitator of bribe payments to

soccer officials and Lopez and Martinez serving primarily as downstream beneficiaries of the

broadcasting rights secured through bribery, it is difficult to imagine a coherent defense

strategy for Lopez and Martinez that would turn on their affirmatively establishing Full

Play's guilt.

       In this respect, among others, this case is readily distinguishable from Shkreli,

260 F. Supp. 3d at 257, and United States v. Nordlicht et al., No. 16-CR-640 (BMC), 2018

WL 1796542, at *2 (E.D.N.Y. Apr. 16, 2018), on which Full Play relies.  In those cases, the

Honorable Kiyo A. Matsumoto and the Honorable Brian M. Cogan, respectively, granted

severance because, among other factors, at least one defendant in each case had stated his

intention to establish his co-defendant's guilt.  See Shkreli, 260 F. Supp. 3d at 256 ("A joint

trial would place on Shkreli an unfair and heavy burden in defending himself against both the

government and [co-defendant] Greebel" given "the stated intention of Greebel's counsel . . .

[that he] will act as a second prosecutor against Shkreli, by arguing that Shkreli is guilty and

---

[6] See Hearing Transcript dated Apr. 6, 2017 at 51-52 ("THE COURT: But this is not a
universe where there was a singular crime that had to be committed by the only two people
in the room.  He could have not taken a bribe, and the other people took a bribe.  He may
disagree that a testifying coconspirator said, 'Yes, he took a bribe with me,' but that's what
you cross-examine on.  That's not an antagonistic defense.  An antagonistic defense is one
where the jury has to choose one of the defendants as having done the crime.  They could
find based on the evidence that you've just cited, or other evidence, that your client didn't
commit the crime, and that anyone who says he did is a liar.  Flat out.  Simple, right?  That's
not antagonistic.  That's challenging the evidence that the government's putting forward.").

that Greebel is, himself, just another victim of Shkreli's fraud."); Nordlicht, 2018 WL 1796542, at *2 ("[Defendant] Shulse's strategy . . . presents a situation that is an order of magnitude more severe than routine accusations and blame-shifting between co-defendants" given Shulse's counsel's stated intention that he "would essentially make his co-defendants face prosecution on two fronts: one attack brought by the Government, an another leveled by Shulse.").

        In Shkreli, the two defendants were closely tied to one another – Greebel served as outside counsel to Shkreli's company – and each sought to establish that he was a victim of the other's failings – Shkreli of Greebel's poor advice, Greebel of Shkreli's fraudulent conduct.  260 F. Supp. 3d at 249-55.  In Nordlicht, Shulse indicated that he intended to argue that his co-defendants, including Nordlicht, perpetrated multiple frauds and concealed those frauds from Shulse, and that "when he became aware of what his co-defendants were doing, [Shulse] immediately brought it to the attention of the SEC and other authorities."  2018 WL 1796542, at *1.  Lopez and Martinez have given no indication that they intend to raise arguments along these lines, nor could they plausibly do so.  Rather, as Full Play all but concedes, Lopez and Martinez are more likely to seek to distance themselves from Full Play as much as possible.

        As this Court recognized in denying severance motions based on antagonistic defenses in advance of the 2017 Trial, vague speculation that conflicting defense arguments may arise does not support the inefficiency of separate trials.  See 2017 Severance Order (ECF Dkt. No. 593) at 18 ("In the absence of any concretely identified antagonistic defenses, the Court will not assume any.  Indeed, this is not a case in which one defendant's assertion of innocence necessarily points the finger at another defendant.").

The same analysis applies here, and Full Play's argument that severance is warranted based on a risk of "double prosecution" should be rejected.

<div align="center">*       *       *</div>

In summary, applying the "commonsense rule," severance is clearly not warranted in light of the factual overlap among charges and evidence, the extraordinary inefficiency that would result from severance, and the lack of prejudice to the defendants from a joint trial.  Shellef, 507 F.3d at 98.

<div align="center">CONCLUSION</div>

For the foregoing reasons, the government respectfully submits that the defendants' motions are without merit and should be denied without prejudice to renewal before trial to the limited extent they seek to sever defendants not before the Court and their corresponding counts.

Dated:      Brooklyn, New York
            August 12, 2020

<div style="margin-left: 45%;">

SETH D. DuCHARME
Acting United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


By:     /s/_____
        Samuel P. Nitze
        M. Kristin Mace
        Keith D. Edelman
        Patrick T. Hein
        Kaitlin T. Farrell
        Assistant United States Attorneys
        (718) 254-7000

</div>