**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Crim. Case No.: 15-cr-252 (PKC) |
| v. | |
| HERNAN LOPEZ, *et. al.*, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW ON BEHALF OF THE DEFENDANT FULL PLAY GROUP IN SUPPORT OF ITS MOTION JOINING IN CO-DEFENDANTS' MOTION FOR SEVERANCE**

**NORTON ROSE FULBRIGHT US LLP**
Carlos F. Ortiz
Mayling C. Blanco
Katey L. Fardelmann
1301 Avenue of the Americas
New York, New York 10019
Tel.: (212) 318-3000

*Attorneys for Defendant Full Play Group S.A.*

On July 24, 2020, Defendant Full Play Group S.A. ("FPG") joined Defendants Hernan Lopez and Carlos Martinez in their Motion for Severance (the "Lopez & Martinez Motion") pursuant to Federal Rules of Criminal Procedure 8(b) and 14(a) arguing that inevitable prejudicial spillover from Lopez's and Martinez's defense would effectively create a second set of prosecutors against FPG (the "FPG Motion"). (Dkt. No. 1423).  On August 12, 2020, the government opposed the FPG Motion and the Lopez & Martinez Motion, maintaining that the Defendants should be tried jointly. (Dkt. No. 1429).  In response to the government's opposition, FPG respectfully submits this memorandum of law in further support of its motion for severance.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The government urges this Court to deny FPG's Motion primarily because FPG cannot satisfy the relevant standard for antagonistic defenses.  Put simply, the government misconstrues the FPG Motion.  FPG is not arguing antagonistic defenses.  Rather, FPG contends that it will be denied its constitutional right to a fair trial due to a substantial risk of "double prosecution."  The government may prefer to conflate antagonistic defenses and double prosecution rather than respond to FPG's actual claims; however, "double prosecution" is an established separate and distinct ground for severance.

Also, in contesting the prejudicial effect Lopez and Martinez will have in a joint trial, the government glosses over the evidence FPG adduced in support of the "double prosecution" risk in this matter.  The Lopez & Martinez Motion sets forth that their defense strategy in a joint trial would be, in part, to highlight their client's absence from the "surfeit of evidence" offered by the government, while underscoring how the evidence implicates FPG.  The core principals established by *Shkreli* and *Nordlicht* are that a defendant should not have to face such a

circumstance.  FPG should not be required to defend itself against both the government and its co-defendants, in effect, two prosecutors.

Finally, while the government suggests there is substantial overlap in evidence as to FPG, Lopez, and Martinez, it offers little proof.  Instead, the government relies heavily on this Court's decision denying prior defendants' motions for severance and the evidence adduced in the 2015 trial of Mr. Napout, Mr. Marin, and Mr. Burga, who were all similarly situated as confederation presidents allegedly receiving bribes in the same schemes.  That trial took place three years before FPG, Lopez, and Martinez were indicted and fails to address the specific tensions raised by a prospective joint trial of these three unique defendants.  The government all but concedes that the four schemes allegedly implicating FPG have no relevance to or are distinct from any role Lopez and Martinez may have played in the single Copa Libertadores scheme.  The potential overlapping evidence proffered by the government, its intention to elicit testimony from Santiago Peña, only underscores the substantial risk of double prosecution.  Due to the lack of significant overlapping evidence, FPG reiterates its position that severance would protect its constitutional right to a fair trial, further judicial economy, and streamline the trial.  Accordingly, severance is warranted in this case.

## II.    ARGUMENT

### A.  Severance is Required Due to the Substantial Risk of Double Prosecution.

The government's response is primarily an attempt to reframe the substantive thrust of FPG's motion for severance as an antagonistic defenses claim.  *See* Dkt. No. 1429 at 21-22.  FPG makes clear in its initial motion that severance under Federal Rules of Criminal Procedure 14(a) should be granted due to the substantial risk of "double prosecution," not antagonistic defenses.  "A defense is mutually antagonistic 'or irreconcilable if, in order to accept the defense of one defendant, the jury must of necessity convict a second defendant.'"  *United States v. Shkreli*, 260

F. Supp. 3d 247, 253 (E.D.N.Y. 2017) (quoting *United States v. Cardascia*, 951 F.2d 474, 484 (2d. Cir. 1991)).  In contrast, "double prosecution" arises where a defendant is forced to wage defenses on two fronts in a single trial: one against the government and the other against co-defendants who "act as a second prosecutor."  *Shkreli*, 260 F. Supp. 3d at 257 ("Although the court finds that the defendants have not shown that their defenses are mutually antagonistic . . . [s]everance is granted because . . . [co-defendant]'s defense team will act as a second prosecutor."); *see also United States v. Nordlicht*, No. 16-CR-00640 (BMC), 2018 WL 1796542, at *2 (E.D.N.Y. Apr. 16, 2018) (severing defendants because the defense strategy of one defendant would necessarily subject the others to "double prosecution").  The government fails to respond to FPG's double prosecution argument in a meaningful way and instead, chooses to focus on an antagonistic defenses argument, which is not the thrust of the FPG Motion.

While FPG acknowledges that "some degree of 'finger-pointing' is to be expected in multi-defendant cases and is tolerable," Lopez's and Martinez's strategy "presents a situation that is an order of magnitude more severe than routine accusations and blame shifting between co-defendants."  *Nordlicht*, 2018 WL 1796542, at *2.  FPG's argument is not mere finger-pointing, but rather that Lopez and Martinez will act as an "echo chamber" to the government's case against FPG.  *Id.*  As discussed in *Nordlicht*, double prosecution existed because one defendant's "counsel contemplated *the possibility* of presenting the jury at closing with a display of emails allegedly incriminating [the defendant]'s co-defendants, and pointing out his clients [the defendant's] absence from them."  *Id.* (emphasis added).

Lopez's and Martinez's strategy in this case would necessarily subject FPG over a multi-week trial to innumerable instances where co-defendants' counsel would present the jury with evidence mirroring the government's supposedly incriminating evidence against FPG, while

pointing out their clients' absence from such evidence.  As described in the FPG Motion, Lopez and Martinez intend to argue that FPG is "guilty as charged," and that Lopez and Martinez were, "at worst, merely an unknowing pawn" in the alleged bribery schemes.  *Id.*; Dkt. No. 1423 at 3-5, 8 ("In the Lopez and Martinez Motion, their counsel set forth that their defense strategy in a joint trial would be, in part, to highlight their client's absence from the 'surfeit of evidence' . . . .  Their motion points out that Lopez and Martinez allegedly played only a minimal role in the charged offenses in alleged contrast to FPG and expresses concern that a joint trial will force counsel to show how each piece of RICO-related evidence and evidence related to the balance of the schemes they are not charged with involve the other co-conspirators and not them.").  In other words, Lopez and Martinez will admittedly underscore the government's evidence against FPG as a means to emphasize the lack of evidence against their own clients.

The government has also said that it intends to offer at trial testimony from Santiago Peña, who will testify about the supposed FPG "bribe ledger", and how "FOX" is allegedly a reference to Copa Libertadores payments.  *See* Dkt. No. 1429 at 16.  This is a prime example of how the echo chamber will effectively work numerous times during the course of the weeks long trial. Admittedly absent from the ledger is any reference to Lopez and Martinez.  Accordingly, after the government has put on Mr. Peña to elicit evidence that supposedly inculpates FPG and Fox, but nothing referencing Lopez and Martinez, co-defendants' counsel will have a right to cross-examine Mr. Peña.  Lopez's counsel will likely elicit from Peña testimony to that effect: "Mr. Peña, this chart allegedly confirms all payments made by FPG, correct?  And it shows FPG made payments to X, Y, and Z, correct?  But the payments are not directly linked to Mr. Lopez in any way, correct? Mr. Lopez is not listed by name in this ledger, correct?"  Then, Mr. Martinez's counsel will be

compelled to do the same.  This line of "echo chamber" questioning will repeat for the many witnesses that will be relevant for only one of the three defendants.

This type of evidence is analogous to the evidence that resulted in a severance ruling in *Nordlicht*.  In *Nordlicht*, the court noted that the one defendant intended to present to the jury emails showing the absence of any reference to one defendant and allegedly inculpating the other co-defendants, thereby echoing the government's case. *Nordlicht*, 2018 WL 1796542, at *2.  The *Nordlicht* court found that inclusion of the one defendant in a joint trial would make the co-defendants confront a dual prosecution: once by the government and another by the defendant. *Id.* Just as in *Nordlicht*, Lopez and Martinez will serve as a true echo chamber, not only once, but twice over, to the government's case.  Lopez and Martinez will thereby cause FPG to mount a three-front defense: once against the government, the second against Lopez, and thrice against Martinez.  Such a circumstance warranted severance in *Nordlicht* and it warrants severance here, twice over.

### B. FPG Offers Sufficient Evidence to Establish a Substantial Risk of Double Prosecution Warranting Severance.

The government, rather than respond to FPG's double prosecution case, seeks to minimize the evidence that FPG offers by simply stating that the FPG Motion is speculative and conclusory. *See* Dkt. No. 1429 at 23.  In its motion to sever, FPG identified multiple statements from the Lopez & Martinez Motion that establish an intent to serve as an echo to the government's case.  For example, Lopez and Martinez highlight that Counts 27-28 are allegations against FPG alone, that there is no connection to Mr. Lopez and Mr. Martinez, and, thus, any evidence presented as to these counts at a joint trial would necessarily require implicating FPG as the single other defendant. *See* Dkt. No. 1408 at 7.  Similarly, Lopez and Martinez note that Counts 29-36 allege that FPG conspired to obtain media and marketing rights for the Copa America tournaments and that nothing

in these counts implicate either Lopez and Martinez. *Id.* at 11.   Again, at a joint trial any evidence presented as to Counts 29-36 will force counsel for Lopez and Martinez to show how each piece of evidence implicates FPG (the only other defendant at trial) and not Lopez and Martinez.   The same will be required for all RICO-related evidence, a charge that, again, does not implicate Lopez and Martinez, but implicates FPG.   *Id.* at 16-17.   Further, as detailed above, the evidence that the government itself has pointed to in its brief, Mr. Peña's testimony, concretely illustrates FPG's point, that the risk of a double prosecution here is not at all speculative, but, rather, very real.   The government altogether fails to address any of these points in its opposition.

### C.   A Joint Trial Would Not Increase Judicial Efficiencies Or Expedite this Case.

While judicial economy or the need to expedite this case would normally serve to offset a request for severance, such counterbalancing factors are not present here and so, FPG should not be forced to endure a joint trial.   Nor can the risks associated with double prosecution be resolved with curative instructions.   The government has attempted to explain how the single alleged scheme against Lopez and Martinez, the Copa Libertadores scheme, vis-à-vis the four alleged schemes against FPG, including a RICO charge, will result in a substantial overlap in evidence at a joint trial.   This explanation essentially ignores the three schemes that implicate only FPG, focusing on a few pieces of "overlapping evidence" related to the Copa Libertadores scheme.   The primary piece of evidence cited by the government is, again, the intended Santiago Peña testimony. However, as discussed above, the intention to elicit testimony from Mr. Peña only underscores the substantial risk of a double prosecution.   The government will most likely elicit from Mr. Peña testimony that touches upon FPG's involvement in the indicted schemes, while only tangentially implicating the co-defendants.   In other words, in separate trials, Mr. Peña's testimony would be very different: in a case against FPG, that testimony would focus on each of the schemes on the ledger and in a case against Lopez and Martinez, it would focus on the connection between them

and Fox.  This does not indicate a need for a joint trial, particularly given the sheer volume and complexity of the allegations against FPG versus the sole allegation against Martinez and Lopez.

Due to the lack of substantial overlapping evidence, FPG reiterates its position that severance would protect its constitutional right to a fair trial, further judicial economy by minimizing the burdens placed on the court related to evidential rulings and curative instructions, and thereby, streamline the trial.  As explained in *Nordlicht*, when a case involves double prosecution, it will "inevitably lead to frequent objections against [co-defendant]'s argument[s] and evidence, seriously disrupting trial in a manner that would test any jury."  2018 WL 1796542, at *2-3 ("[T]he Court anticipates innumerable objections during openings and witness examinations and cross-examinations, along with frequent side bars.").  The court in *Nordlicht* also noted that these "risks add[ ] to the complexity of an already challenging case, extending its length, and disrupting the parties' presentation, all of which will heighten the chances of jury confusion, further jeopardizing defendants' right to a fair trial."  *Id.* at 3; *see also Shkreli*, 260 F. Supp. 3d at 256-57 (granting severance in a double prosecution case, in part, due to the complexity of trial management, including "frequent objections during the trial, both to the government's and each co-defendant's evidence" and a "litany of side bar debates about various legal issues including limiting instructions [and] admissions by a co-defendant", which "will disrupt the flow of the trial and increase the length of the trial" and "will likely confuse the jury in what is already a complex case").

The same is true in this case.  Due to the substantial risk of double prosecution, FPG anticipates frequent objections throughout the trial, during openings, witness examinations, cross-examinations, and closing as well as multiple side bars.  These risks are only heightened by the complexity of this case.  At the April 9, 2020 arraignment of Defendants Lopez, Martinez, and

FPG, the government requested and the Court designated this as a complex case. *See* Minute Entry

for April 9, 2020 Arraignment/Bail Hearing.  Combining the risk of innumerable objections and

side bars with this already challenging case will extend the length of trial, disrupt the parties'

presentations and ultimately, make curative instruction ineffective and "heighten the chances of

jury confusion, further jeopardizing defendants' right to a fair trial."[1]  Accordingly, as in *Nordlicht*,

due to the inescapable trial prejudice faced by FPG, that are not militated by any trial management

concerns, the appropriate solution is severance.

### III.    CONCLUSION

For the foregoing reasons, FPG respectfully requests that the Court grant its Motion for

Severance of Defendants.

Dated:  New York, New York
        August 26, 2020

NORTON ROSE FULBRIGHT US LLP

By:   */s/ Carlos F. Ortiz*
      Carlos F. Ortiz
      Mayling C. Blanco
      Katey L. Fardelmann
      1301 Avenue of the Americas
      New York, NY  10103
      Tel. (212) 318-3000
      Fax (212) 318-3400
      carlos.ortiz@nortonrosefulbright.com
      mayling.blanco@nortonrosefulbright.com
      katey.fardelmann@nortonrosefulbright.com

      *Attorneys for Defendants Full Play Group
      S.A.*

---

[1] The government's opposition suggests that it would seek to introduce evidence against Defendants Lopez and Martinez of the other alleged bribe schemes, for which they were not charged, based on a Federal Rules of Criminal Procedure 404(b) argument.  *See* Dkt. No. 1429 at 16.  The government argues that the evidence of the other bribe schemes are inextricably intertwined with the single offense charged against Lopez and Martinez.  *Id.*  This argument seems to be a stretch, since, if the cases were tried separately, there are likely other, more feasible alternatives, such as redactions, that could minimize the prejudicial risk to Lopez and Martinez.  These alternatives are, of course, unavailable if the case is tried jointly.  This is yet another example of the highly complex, inefficient, and convoluted nature of this case if it moves forward as a joint trial.  Introduction of evidence under such a 404(b) argument will result in additional objections, side bars, and an instruction that would ask the jury to consider certain evidence against one party in one way, but against the others in a different way.  This approach will inevitably further disrupt trial and try the jury's patience and ability to make reliable judgments about guilt or innocence.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 26th day of August, I electronically filed the foregoing

with the Clerk of Court for the United States District for the Eastern District of New York by using

the CM/ECF system, which will electronically notify all participants in this case.


*/s/ Carlos F. Ortiz*

Carlos F. Ortiz