UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
UNITED STATES OF AMERICA,

- against -

REYNALDO VASQUEZ, FULL PLAY
GROUP, S.A., HERNAN LOPEZ, CARLOS
MARTINEZ,

       Defendants.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
15-CR-252 (PKC)

PAMELA K. CHEN, United States District Judge:

  Pending before the Court is the motion of Defendants Hernan Lopez, Carlos Martinez, Full Play Group, S.A. ("Full Play"), and Reynaldo Vasquez to compel the Government to produce all documents it obtained from 21st Century Fox ("Fox") and Torneos y Competencias, S.A. ("Torneos"), an Argentinian sports media company. (*See* Dkt. 1441-1 (motion filed by Defendants Lopez and Martinez); Dkt. 1497 (Defendant Full Play joining motion); Dkt. 1501 (Defendant Vasquez joining motion).) These two entities are at the center of several of the bribery schemes alleged in the Indictment. (*See* Third Superseding ("S-3") Indictment, Dkt. 1337, ¶¶ 71–74.) Accordingly, at oral argument on November 20, 2020, the Court directed the Government to file a letter summarizing the categories of Fox and Torneos materials it was withholding from Defendants. (11/20/2020 Minute Entry.)

  On January 15, 2021, the Government filed a letter identifying five categories of documents it intended to withhold as not discoverable: (1) scheduling emails, cover emails relating to discovery, and "non-substantive" correspondence; (2) drafts of the deferred prosecution agreement ("DPA") between the Government and Torneos and documents related to the resolution of Fox's and Torneos's criminal exposure, including PowerPoint decks that Fox and Torneos presented to the Government; (3) Torneos's annual compliance reports; (4) documents concerning the

1

forfeiture of funds owed to Datisa, a partnership that included Torneos, Defendant Full Play, and Traffic Sports International ("Traffic"); and (5) correspondence and filings relating to a civil case currently pending but stayed in the United States District Court for the Southern District of Florida. (*See generally* Dkt. 1476.) The Government emphasized in its letter, however, that although it was intending to withhold these categories of documents pertaining to its investigation and cooperation with various entities, it had no intention of withholding any "historical" documents in its possession—that is, documents generated during the period of the alleged bribery schemes. (*Id.* at 1–2.) The Government also reiterated, as it had done several times, that it remains "aware of, understands, and fully intends to comply with its discovery and disclosure obligations under Rule 16, *Brady*, *Giglio*, and the Jencks Act." (*Id.* at 2; *see also* Dkt. 1444, at 3–4.)

Defendants Lopez, Martinez, and Full Play responded to the Government's letter on February 11, 2021, arguing that all of the materials identified by the Government in its letter are discoverable.[1] (*See* Dkts. 1495, 1497.) Defendants emphasized that on February 9, 2021, the Government had responded to several of Defendants' discovery requests and, among other things, notably stated that

> at times during the course of its cooperation with the government's investigation, counsel for Fox expressed their view that, in sum and substance, and based on their and prior counsel's review of documents and interviews of various employees, including [of Defendants] Lopez and Martinez, the evidence was not sufficient to

---

[1] Defendant Full Play argued in its response that, in addition to materials from Fox and Torneos, the Government should be compelled to produce similar materials for other entities that are relevant to the additional charges against Full Play (in which Lopez and Martinez are not indicted). (*See* Dkt. 1497, at 2–3.) These other entities include Datisa, Traffic, T&T Sports Marketing Ltd., Fox Pan American Sports, CONCACAF, CONMEBOL, and FIFA. (*See id.*) Given that the parties' submissions have centered on materials from Fox and Torneos, this Memorandum & Order focuses on those materials. Nevertheless, to the extent that materials from other entities are similar and analogous to the materials at issue from Fox and Torneos, the parties should not construe the reasoning and conclusions herein as being cabined to materials from Fox and Torneos.

establish that Lopez and Martinez or others at Fox participated in or were aware of
the bribery alleged in the government's case.

(Dkt. 1495-1, at 3; *see also* Dkt. 1495, at 2.) The Government provided no additional details or elaboration. (*See* Dkt. 1495, at 2; Dkt. 1495-1, at 3.)

On March 3, 2021, the Court held oral argument to discuss the materials identified in the Government's January 15, 2021 letter. (3/3/2021 Minute Entry.) Based on the parties' arguments and submissions, the Court directed the Government to produce for *in camera* review all PowerPoint presentations it had received from relevant cooperating entities, including Fox, Torneos, Datisa, Traffic, T&T Sports Marketing Ltd., Fox Pan American Sports, CONCACAF,[2] CONMEBOL,[3] and FIFA. (*See id.*) In response, the Government produced several PowerPoint presentations from Torneos, one presentation from Fox, and one presentation from CONCACAF. Subsequently, on April 15, 2021, the Court held an *ex parte* conference with the Government so that it could ask the Government questions to understand more fully the information in the various presentations. (*See* 4/1/2021 Scheduling Order; 4/15/2021 Minute Entry.)

Having reviewed the Government's *in camera* submissions and thoroughly considered the parties' briefing and arguments, the Court concludes that the materials identified in the Government's letter dated January 15, 2021, are not discoverable under Rule 16 of the Federal Rules of Criminal Procedure.

---

[2] "CONCACAF," which standards for "Confederation of North, Central American and Caribbean Association Football," is a continental soccer confederation for North America, Central America, the Caribbean, and three South American countries. The United States and two of its territories, Puerto Rico and the U.S. Virgin Islands, are members of CONCACAF. (S-3 Indictment, Dkt. 1337, ¶¶ 1, 9.)

[3] "CONMEBOL," which stands for "Confederación Sudamericana de Fútbol," is a continental soccer confederation for most of South America. (S-3 Indictment, Dkt. 1337, ¶¶ 1, 10.)

## DISCUSSION

**I.     Legal Standard**

Rule 16 of the Federal Rules of Criminal Procedure provides for pretrial discovery of items "within the government's possession, custody, or control" if they are "material to preparing the defense." Fed. R. Crim P. 16(a)(1)(E)(i). "Evidence is material 'if it could be used to counter the government's case or to bolster a defense.'" *United States v. Clarke*, 979 F.3d 82, 97 (2d Cir. 2020) (quoting *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)). This standard "normally is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Stein*, 488 F. Supp. 2d 350, 356–57 (S.D.N.Y. 2007) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)); *accord United States v. Messina*, No. 11-CR-31 (KAM), 2011 WL 3471511, at *1 (E.D.N.Y. Aug. 8, 2011).[4]

---

[4] As the Government emphasizes (*see* Dkt. 1476, at 3), courts assessing materiality under Rule 16 have also said that "the requested information must 'enable[] the defendant significantly to alter the quantum of proof in his favor.'" *Messina*, 2011 WL 3471511, at *1 (alteration in original) (quoting *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991)); *accord Stein*, 488 F. Supp. 2d at 357. This articulation of the standard, however, to the extent that it is more stringent than the one stated above, appears to trace back to *United States v. Maniktala*, a case where the defendant had focused on a *Brady* violation in post-trial proceedings before the district court, but recast the issue as a Rule 16 violation on appeal before the Second Circuit. *See Maniktala*, 934 F.2d at 27–28. Accordingly, the Second Circuit in *Maniktala* observed that "[m]ateriality, of course, must be assessed against the backdrop of all the evidence presented to the jury," 934 F.2d at 28, before going on to say that "[t]here must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor," *id.* (quoting *United States v. Ross*, 511 F.2d 757, 762–63 (5th Cir. 1975)). In other words, the articulation of the standard from *Maniktala* may be less applicable where, as here, materiality is being assessed before trial, without "the backdrop of all the evidence presented to the jury," and the relevant question is not whether there should be a new trial on account of the denial of certain pretrial discovery but whether certain pretrial discovery is warranted. *See id.* Second Circuit decisions after *Maniktala* confirm this point. *See, e.g.*, *Clarke*, 979 F.3d at 97 ("We have stated that we will order a new trial on account of the denial of discovery only if there is 'some indication that the pretrial disclosure of the disputed evidence would have enabled the

Rule 16, however, "does not entitle a criminal defendant to a broad and blind fishing expedition among items possessed by the Government on the chance that something impeaching might turn up." *United States v. Scully*, 108 F. Supp. 3d 59, 123 (E.D.N.Y. 2015) (internal quotation marks and alteration omitted) (quoting *United States v. Larranga Lopez*, No. 05-CR-655 (SLT), 2006 WL 1307963, at *8 (E.D.N.Y. May 11, 2006)). Indeed, "materiality under Rule 16 is not the same as 'useful.'" *United States v. Wilson*, No. 19-CR-155 (EAW), — F. Supp. 3d —, 2021 WL 480853, at *5 (W.D.N.Y. Feb. 10, 2021) (quoting *United States v. Rigas*, 258 F. Supp. 2d 299, 307 (S.D.N.Y. 2003)); *see also United States v. Tolliver*, 569 F.2d 724, 728 (2d Cir. 1978) ("Discovery of evidence in criminal prosecutions is, inevitably, more restricted than discovery in civil cases."). A defendant, moreover, is not entitled to discovery of "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case," regardless of the materiality of such items. Fed. R. Crim. P. 16(a)(2).

The defendant has the burden of making a *prima facie* showing that items sought under Rule 16 are material. *Clarke*, 979 F.3d at 97 (collecting cases); *accord Messina*, 2011 WL 3471511, at *2. Conclusory allegations that the requested items are material do not suffice. *United States v. Defreitas*, No. 07-CR-543 (DLI) (SMG), 2011 WL 317964, at *9 (E.D.N.Y. Jan. 31, 2011) (citing *United States v. Giffen*, 379 F. Supp. 2d 337, 342 (S.D.N.Y. 2004)).

---

defendant significantly to alter the quantum of proof in his favor.'" (quoting *Stevens*, 985 F.2d at 1180)); *Stevens*, 985 F.2d at 1180 ("To warrant a new trial, '[t]here must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor.'" (alteration in original) (quoting *Maniktala*, 934 F.2d at 28)).

## II. Scheduling Emails, Cover Emails, and "Non-Substantive" Correspondence

The first category of disputed materials includes emails regarding "issues such as the scheduling of telephone calls, coordination of meeting dates, passwords or mailing information relating to production sets, inquiries about the timing for delivery of requested information, or other non-substantive content." (Dkt. 1476, at 3.) Although Defendants admit that passwords and mailing information for production sets are not material (Dkt. 1495, at 3 n.2), they argue that emails involving the scheduling of telephone calls and meetings, as well as the dates of document productions, are material, because such items "would provide valuable insight into each cooperating entity's role in the investigation" (*id.* at 3). They argue that information about the timing and extent of each entity's cooperation with the Government is "particularly important" given that Fox has expressed the view that there is a lack of sufficient evidence, particularly with respect to Defendants Lopez and Martinez, while Torneos decided to enter into a DPA with the Government. (*See id.*)

Even assuming that items such as scheduling and cover emails could provide information about the timing and frequency of the Government's meetings with representatives of Fox and Torneos, Defendants fail to provide "a strong indication" that such information "will play an important role" in preparing the defense. *See Stein*, 488 F. Supp. 2d at 356–57; *see also Clarke*, 979 F.3d at 97. The Government has informed Defendants of Fox's view of the sufficiency of the evidence, as expressed to the Government. Defendants also have received, or will shortly receive, all "historical" documents and materials in the Government's possession that were generated during the period of the alleged bribery schemes. Defendants, moreover, have a preview of how the Government might prove its case, given the 2017 jury trial of Juan Ángel Napout, José Maria Marin, and Manuel Burga—three other defendants in this case. In light of the information that they have received or will receive, Defendants fail to make a sufficient showing that scheduling

6

and cover emails would meaningfully help them prepare their defense in any way. To the extent that Defendants suggest that scheduling and cover emails would provide information or context as to how or why Fox attorneys arrived at their conclusion regarding the sufficiency of the evidence, the Court finds Defendants' suggestion speculative and nonsensical.

Defendants' reliance on *United States v. Sudikoff*, 36 F. Supp. 2d 1196 (C.D. Cal. 1999), is also unavailing. (*See* Dkt. 1495, at 3 (quoting *Sudikoff*, 36 F. Supp. 2d at 1203).) The items at issue in *Sudikoff* were proffers of an accomplice witness and other items that revealed the negotiations leading to a leniency agreement. *See* 36 F. Supp. 2d at 1201–03. In holding that such materials fell "within the scope of *Giglio*," the court in *Sudikoff* observed that a witness's motive in agreeing to testify "may range from a simple quid pro quo to an earnest desire to disclose the truth" and that "[t]he defense cannot distinguish between such motives unless the government reveals information about the negotiation leading to the agreement." *Id.* at 1202–03. Thus, the court concluded that "information that reveals the process by which an accomplice witness and the government reach a leniency agreement is relevant to the witness's credibility," and "is discoverable under *Brady* and *Giglio*." *Id.* at 1203. *Sudikoff* accordingly is inapposite as to whether the materials here are discoverable under Rule 16. And in any event, Defendants fail to explain how scheduling and cover emails are analogous to witness proffers, or other information that reveals the substance of the witness's and Government's negotiation of a leniency agreement.

In short, Defendants fail to demonstrate that their request for scheduling emails, cover emails, and other similar non-substantive materials in this case is anything more than a "broad and blind fishing expedition." *See Scully*, 108 F. Supp. 3d at 123. Their motion to compel the Government to turn over such materials is therefore denied.

## III. Drafts of DPA and PowerPoint Decks

The next category of disputed materials encompasses drafts of the DPA between Torneos and the Government[5] and correspondence related to resolving the criminal exposure of Torneos and other entities, including various PowerPoint decks that were presented during the course of meetings with the Government. These items are not material in this case, and not discoverable under Rule 16.

In arguing that drafts of the DPA between Torneos and the Government are discoverable, Defendants rely on *United States v. Stein*, 488 F. Supp. 2d 350 (S.D.N.Y. 2007). In *Stein*, the Government was compelled to produce drafts of the statement of facts of a DPA with a cooperating entity, KPMG, because "[d]isclosure of the give and take as to what KPMG was prepared to admit and what the government unsuccessfully sought [was] likely to shed light on matters at issue in th[e] case." 488 F. Supp. 2d at 359. For a similar reason, the Government was also compelled to produce documents it received from KPMG "summarizing or recording the substance of communications between KPMG and government agencies that relate[d] to the facts at issue in th[e] indictment," or "discussing evidence bearing on the accuracy of the Statement of Facts [in the DPA] or any admissions sought by the government." *See id.* at 360.

*Stein*, however, is inapposite with respect to the DPA here. As the Government has represented, the drafts of the DPA and related correspondence in this case "primarily reflect negotiation over the terms of the resolution (such as the amount of the fine and forfeiture) and do not include denials by Torneos or disagreements over the underlying facts." (Dkt. 1476, at 4.) In other words, the drafts and correspondence here, unlike in *Stein*, apparently do not disclose any

---

[5] The DPA in its final form has been publicly filed. *See United States v. Torneos y Competencias S.A.*, No. 16-CR-634 (E.D.N.Y. Dec. 13, 2016), ECF. No. 4-2. The DPA includes, as Attachment B, a statement of facts spanning a total of 45 paragraphs. *See id.* at B-1–B-17.

8

substantial "give and take" between Torneos and the Government as to facts that would be at issue at trial in this case. The Court finds no reason to doubt the Government's representation.[6] Defendants contend that information regarding the evolution of the fine and forfeiture imposed on Torneos is "prime material for impeachment of key cooperating defendants and witnesses associated with Torneos and could be used to highlight Torneos' motives to cooperate with the [G]overnment." (Dkt. 1495, at 5 (citing *Sudikoff*, 36 F. Supp. 2d at 1203).) This argument is unconvincing. The amount of Torneos's forfeiture and fine is not a matter at issue in this case, so it is unclear how information about the evolution of that amount could be used to impeach a witness with regard to any relevant testimony at trial. Nor do Defendants explain how the evolution of the amount of Torneos's forfeiture and fine—when the actual amount is known—sheds any additional light on the company's motives to cooperate with the Government. In short, Defendants do not provide "a strong indication" that the drafts of the DPA in this case "will play an important role" in assisting impeachment, or otherwise preparing the defense. *See Stein*, 488 F. Supp. 2d at 356–57. The drafts therefore are not discoverable under Rule 16.

Likewise, after reviewing the PowerPoint presentations *in camera*, the Court concludes that they are not discoverable under Rule 16. To start, the Court rejects Defendants' suggestion that the presentations are material simply because they contain analysis pertaining to the "Filip

---

[6] If the DPA drafts were to reflect denials of or substantive disagreements over underlying facts, such that the drafts might provide information on the "give and take" between Torneos and the Government as to relevant issues at trial, *Stein* might apply. *See Stein*, 488 F. Supp. 2d at 359. Similarly, correspondence discussing evidence bearing on the accuracy of facts at issue or admissions sought by the Government as to those facts, or otherwise recording or reflecting negotiation between the parties as to facts at issue, would be material under *Stein*. *See id.* at 359–60. However, as discussed below, items that simply summarize facts or documents already produced to Defendants and that reflect no information based on the special knowledge of the proponent, at most, fall into the category of being merely "useful" and are not material. *See infra*.

9

Factors" used by United States Attorneys to evaluate whether to prosecute a corporate entity.[7] (*See*
Dkt. 1497, at 5.) Defendants provide no reason to believe that a "Filip Factors" analysis
categorically meets the standard of materiality, and in fact, Defendants' principal case, *Stein*, belies
their argument. Although the defendants in *Stein* contended that a white paper "in which KPMG
argued that the firm should not be indicted" was discoverable under Rule 16, 488 F. Supp. 2d at
357, the court concluded after *in camera* review that the white paper and its appendices "[i]n the
main" were "not material to the preparation of the defense," *id.* at 359. The only exception to the
court's conclusion was a part of the white paper that explained and rationalized several incidents
that were at the heart of the claims in the indictment. *Id.* None of the PowerPoint presentations
here, to the extent that they analyze the Filip Factors, provide rationalization or characterization of
the events alleged in the Indictment. Notably, contrary to Defendants' speculation (*see* Dkt. 1495,
at 6), the one presentation from Fox does not illuminate in any way how or why Fox attorneys
arrived at the view that there exists insufficient evidence to establish that Lopez and Martinez, or
others at Fox, participated in or were aware of the alleged bribery schemes.

Instead, as the Government has represented, and confirmed to the Court at the *ex parte*
conference on April 15, 2021, the PowerPoint presentations almost entirely reference or
summarize underlying materials already produced to Defendants by the Government. (*See* Dkt.

---

[7] The "Filip Factors" include, among others: (1) "the nature and seriousness of the offense"; (2) "the pervasiveness of wrongdoing within the corporation, including the complicity in, or the condoning of, the wrongdoing by corporate management"; (3) "the corporation's history of similar misconduct"; (4) "the corporation's willingness to cooperate"; (5) "the adequacy and effectiveness of the corporation's compliance program at the time of the offense, as well as at the time of a charging decision"; (6) "the corporation's timely and voluntary disclosure of wrongdoing"; (7) "the corporation's remedial actions"; (8) "collateral consequences"; (9) "the adequacy of remedies such as civil or regulatory enforcement actions"; and (10) "the adequacy of the prosecution of individuals responsible for the corporation's malfeasance." *United States Attorneys' Manual* § 9-28.300. (*See also* Dkt. 1495, at 6; Dkt. 1497, at 5.)

1476, at 5.) That the presentations piece together information already disclosed to Defendants, or arrange or summarize such information in a more digestible format, does not make them material.

*United States v. Rigas*, 258 F. Supp. 2d 299 (S.D.N.Y. 2003), is instructive. In that case, a corporation engaged two law firms and an accounting firm to investigate the defendants' conduct and determine whether the defendants had engaged in any wrongdoing while managing the corporation. 258 F. Supp. 2d at 306. As part of their investigation, the firms "created catalogues indexing [the corporation]'s documents by issue, conducted interviews, made presentations to the government and other parties, and prepared reports synthesizing their conclusions." *Id.* The defendants moved under Rule 16 to compel production of the "memoranda, presentations, reports, and issues catalogues (collectively, 'Firm Documents')"—even though the government had "agreed to provide any documents referred to, cited in, or incorporated in the Firm Documents; any witness statements subject to disclosure under 18 U.S.C. § 3500; and any *Brady* or *Giglio* material contained therein." *See id.* The Honorable Leonard B. Sand denied the defendants' request, concluding that the items that they requested were not discoverable, except to the extent that they contained *Brady* or Jencks Act material. *See id.* at 307 (discussing *United States v. Reddy*, 190 F. Supp. 2d 558, 572–73 (S.D.N.Y. 2002)). "[A]t bottom," Judge Sand wrote, "[d]efendants attempt to equate 'material' with 'useful' in order to meet their burden under Rule 16(a)(1)(E)(i)," a proposition for which Judge Sand found "no relevant support." *Id.*

Likewise, here, the Court finds nothing in the PowerPoint presentations to indicate that they would be anything more than "useful" to Defendants—particularly considering that all of the underlying documents have been produced to Defendants, and Defendants even have testimony from the earlier trial in this case that explains many of the underlying documents. *Cf. id.* (rejecting an argument that items were material because "the information contained therein presumably

played a role in the structure of the government's case"). The Court notes that if the presentations contained information or conclusions based on the proponent's special knowledge, such information may be material. But the Court found no information of that sort in reviewing the PowerPoint presentations, and, as the Government has stated, "[t]o the extent [the] presentations include substantive, material, non-public information not otherwise available in the underlying documents" already disclosed to Defendants, the Government "will disclose . . . such information in letter form."[8] (Dkt. 1476, at 5.) The Court finds no reason to doubt the Government's assurances. The Court also accepts the Government's good-faith representations that it understands and will continue to comply, as it must, with its disclosure obligations under *Brady*, *Giglio*, and the Jencks Act. *See United States v. Shkreli*, No. 15-CR-637 (KAM), 2016 WL 8711065, at *2 (E.D.N.Y. Dec. 16, 2016) (noting that "courts of this Circuit repeatedly have denied pretrial requests for discovery orders pursuant to *Brady*" where "[t]he Government has made good faith representations . . . that it recognizes its disclosure obligations under *Brady*, and that it has complied with said obligations and will continue to do so in a timely manner" (collecting cases)).

Defendants' request under Rule 16 to compel production of drafts of the DPA and correspondence related to the resolution of Torneos's and other entities' criminal exposure, including PowerPoint decks presented to the Government, is denied.[9]

---

[8] Defendants object to the Government's proposal to provide certain information in letter form. (*See* Dkt. 1495, at 5.) The Court does not find Defendants' objection well-founded as a general matter. It goes without saying that if information is discoverable under Rule 16, or otherwise, it must be disclosed to Defendants in a form that they will be able to use effectively. The Court trusts that the Government is able to discern when and to what extent disclosure of information by letter is appropriate.

[9] After the Court ordered the Government to produce all of the PowerPoint decks in its possession for *in camera* review, the Government filed a partially redacted letter on March 23, 2021, conveying concerns from Torneos regarding potential disclosure of decks produced by Torneos. (Dkt. 1513.) The Government submitted *ex parte* an unredacted version of the March 23, 2021 letter, along with a copy of a letter from Torneos to the Government specifying Torneos's

12

## IV. Torneos's Annual Compliance Reports

The next category of disputed materials centers around annual compliance reports that Torneos has submitted to the Government in accordance with the terms of the DPA. (*See* Dkt. 1476, at 5.) Because the Court is having difficulty making sense of Defendants' arguments regarding these documents, it repeats those arguments in full and verbatim:

> The government asserts, in conclusory fashion, that Torneos' annual compliance reports are not discoverable. But information about Torneos' efforts to institute a robust compliance program relates to how Torneos' evident prior lack of internal compliance guidelines allowed its bribery scheme to flourish. For instance, the government's February 9, 2021 letter states that Torneos installed an outside consultant to "assume control of [its] finance department," after the May 2015 indictment was unsealed, and instituted a number of new controls and policies aimed to prevent further misuse of its funds. This is direct evidence of Torneos' problematic financial controls during the relevant time period, or at the very least, evidence under Federal Rule of Evidence 404(b) that Mr. Lopez and Mr. Martinez may wish to introduce at trial. Indeed, the government's case at trial will presumably involve direct or circumstantial evidence that Torneos' illegal actions occurred because it lacked appropriate internal controls. Moreover, to the extent that Torneos' annual compliance reports include further evidence, uncovered through Torneos' internal investigation, of prior wrongdoing, that information is material to the defense. Thus, the fact that Torneos instituted remedial measures to address the prior misconduct of its employees and to prevent others from engaging in similar future conduct is relevant to whether Torneos effectuated the bribery scheme without the knowledge of Mr. Lopez and Mr. Martinez.

(*See* Dkt. 1495, at 6–7 (footnote and internal citations omitted).)

First, it appears that Defendants maintain that Torneos's compliance reports will show how the alleged bribery scheme involving Fox and Defendants Martinez and Lopez was "allowed to flourish" at Torneos. But so what? Even assuming that the compliance reports, in fact, show how

---

concerns. In determining that the PowerPoint presentations at issue are not discoverable under Rule 16, the Court has not relied on any information in either the Government's letter or Torneos's letter. Rather, the Court concludes that the PowerPoint presentations are simply not material to preparing the defense within the meaning of Rule 16(a)(1)(E)(i). Accordingly, the Court denies Defendants' request to compel the Government to produce an unredacted copy of its March 23, 2021 letter and a copy of the *ex parte* letter from Torneos. (*See* Dkts. 1515, 1516; *see also* 4/1/2021 Docket Order.)

the bribery scheme succeeded at Torneos—which is speculative in itself—Defendants fail to show how that evidence is material to their defense, or even relevant to the Government's case against them. Defendants seem to suggest that evidence of Torneos's lack of robust financial controls tends to show that the alleged bribery schemes were perpetrated without Defendants' participation or knowledge, but Defendants provide no logical basis for such an inferential leap.

Second, Defendants argue that the compliance reports are "direct evidence of Torneos' problematic financial controls during the relevant time period, or at the very least, evidence under Federal Rule of Evidence 404(b) that Mr. Lopez and Mr. Martinez may wish to introduce at trial." Again, the Court cannot divine how the lack of financial controls at Torneos—assuming that such absence can be shown through Torneos's post-DPA compliance reports—relates to Defendants' alleged participation in the bribery scheme or how it constitutes Rule 404(b) evidence that Defendants might want to introduce at trial.[10] Indeed, Torneos will not be on trial in any capacity, so Defendants' argument that the compliance reports are material as potential other-crimes evidence under Rule 404(b) is puzzling. Defendants' argument simply has no meaning and amounts to vague speculation at best.

Finally, the Court is baffled by Defendants' argument that Torneos's institution of "remedial measures to address the prior misconduct of its employees and to prevent others from engaging in similar future conduct is relevant to whether Torneos effectuated the bribery scheme without the knowledge of Mr. Lopez and Mr. Martinez." Defendants utterly fail to connect those dots in a way that permits the Court to reach that conclusion.

---

[10] Indeed, the Court cannot understand Defendants' use of the term "prior wrongdoing" to describe the lack of financial controls at Torneos. If anything, it is part of the charged bribery scheme, not wrongdoing that occurred prior to it. Defendants appear to be using the term "prior wrongdoing" to incorrectly describe Torneos's conduct prior to the execution of the DPA, not prior to the bribery scheme.

In sum, the only conclusion that the Court can draw from Defendants' arguments regarding the compliance reports is that Defendants are blindly fishing in the hope that something relevant might turn up. *See Scully*, 108 F. Supp. 3d at 123. Their request to compel the Government to produce Torneos's annual compliance reports is denied.

## V. Documents Regarding Forfeiture of Datisa-Related Funds

The Government explains that, in accordance with the terms of the DPA, "Torneos and its counsel issued various letters and other correspondence seeking to collect outstanding payments" from downstream parties owing money to Datisa. (Dkt. 1476, at 5.) Defendants argue that these documents are discoverable because they provide information about certain transfers, payment instructions, and related information. (*See* Dkt. 1495, at 7.) But to the extent that these documents provide any such information, they relate to remedial payments and transfers, not to any payments or transfers during the relevant period. Defendants provide no meaningful showing that information regarding remedial payments will help them build their case or impeach the Government's case. Accordingly, Defendants' motion to compel production of documents regarding forfeiture of Datisa-related funds is denied.

## VI. Correspondence and Filings Related to Civil Case

The final category of materials at issue includes "various emails, letters and related documents, including court filings, obtained in connection with civil litigation currently pending but stayed in federal court in the Southern District of Florida." (Dkt. 1476, at 5 (citing *GolTV, Inc. v. Fox Sports Latin Am., Ltd.*, No. 16-CV-24431 (S.D. Fla. filed Oct. 20, 2016)).) For example, the Government "received some correspondence from parties to that litigation, including Fox and Torneos," in connection with the Government's motion to stay the case and related discovery matters. (*Id.*) Defendants argue that these items are discoverable because "correspondence

15

showing a coordinated effort or strategy on behalf of Torneos, or its former CEO Burzaco, would be material." (Dkt. 1495, at 8.)

As an initial matter, Defendants provide no basis to conclude that the correspondence related to the civil case displays "a coordinated effort or strategy" on the part of Torneos and the Government. (*See id.*) Even if it did display such an effort or strategy, Defendants' conclusory argument does not sufficiently show that such information is material to preparing the defense. The defense has provided no reason to find that coordination between the Government and Torneos with respect to the civil case will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal in this case. Thus, Defendants' request to compel production of correspondence and filings related to the civil case pending in federal court in the Southern District of Florida is denied.

## CONCLUSION

Defendants' motion to compel production of materials from Fox and Torneos (*see* Dkts. 1441-1, 1495, 1497, 1501), as specified in the Government's letter dated January 15, 2021 (*see* Dkt. 1476), is denied. Defendants' request to compel production of an unredacted copy of the Government's letter dated March 23, 2021, and a copy of the *ex parte* letter from Torneos (*see* Dkts. 1515, 1516) is also denied.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: May 27, 2021
      Brooklyn, New York