

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

SPN/PTH/KTF/VAZ

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 22, 2021

<u>By Electronic Mail and ECF</u>

The Honorable Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Full Play Group, SA, <u>et</u> <u>al.</u>
     <u>Criminal Docket No. 15-252 (S-3) (PKC)</u>

Dear Judge Chen:

   The government writes pursuant to the joint briefing schedule filed by the parties and largely adopted by the Court on June 29, 2021, <u>see</u> ECF Dkt. No. 1557; ECF Minute Order (June 29, 2021), to provide the Court and the parties with further detail regarding the scope of the proof of racketeering activity the government intends to introduce at trial. The government also hereby provides notice of certain evidence it seeks to admit pursuant to, among other provisions, Federal Rule of Evidence 404(b), and respectfully requests that the Court find that it is admissible as to each of the defendants currently before the Court.[1]

---

[1] The government reserves the right to make additional motions, including motions pursuant to Federal Rule of Evidence 404(b) and motions that may become appropriate following the disclosure of certain witnesses' 18 U.S.C. § 3500 material. <u>See</u> Fed. R. Evid. 404(b)(3) (the government must "provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it" and "do so in writing before trial — or in any form during trial if the court, for good cause, excuses lack of pretrial notice"); <u>see also, e.g.,</u> <u>United States v. Valenti</u>, 60 F.3d 941, 945 (2d Cir. 1995) (approving notice four days before trial); <u>United States v. Parris</u>, No. 13-CR-17 (DAB), 2014 WL 2745332, at *15 (S.D.N.Y. June 17, 2014) (noting that courts in the Second Circuit "routinely" approve ten days' notice); <u>United States v. Matos-Peralta</u>, 691 F. Supp. 780, 791 (S.D.N.Y. 1988) (finding no set time limits imposed by Rule 404(b) because "the evidence the government wishes to offer may well change as the proof and possible defenses crystallize").

I. Overview of Charges

As alleged in the third superseding indictment (the "Indictment"), the defendants Full Play Group S.A. ("Full Play"), Hernan Lopez, and Carlos Martinez (the "Defendants") participated in various bribery and kickback schemes in connection with their efforts to secure lucrative sports media and marketing rights to various soccer tournaments and related events in Latin America and beyond. Specifically, Full Play is charged with racketeering conspiracy, wire fraud conspiracy, wire fraud, and money laundering conspiracy in connection with, variously, the Copa Libertadores #2 Scheme, the Copa América Scheme, the CONMEBOL World Cup Qualifiers/Friendlies Scheme, and the CONCACAF Media and Marketing Rights Scheme, all as defined and described in the Indictment. (See, e.g., Ind. ¶¶ 19–20, 60–65, 70–74, 79–85, 100–03, 113–15, 129–35, 146–56, 161–65). Lopez and Martinez are charged with wire fraud conspiracy, wire fraud, and money laundering conspiracy in connection with the Copa Libertadores #2 Scheme. (See, e.g., Ind. ¶¶ 21–22, 60–62, 65, 70–74, 129–35).

II. The Scope of the Government's Anticipated Proof of Racketeering Activity

To prove the charged racketeering conspiracy, the government must establish, among other things, that Full Play agreed to commit crimes that were part of a pattern of racketeering activity, i.e., "a series of related predicates that together demonstrate the existence or threat of continued criminal activity." See RJR Nabisco, Inc. v. European Cmty., 136 S. Ct. 2090, 2096–97 (2016) (citing H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)). The government therefore will offer evidence at trial proving that there was continuity to the conduct of Full Play and its racketeering co-conspirators, such that the conduct occurred over a long period of time, and that Full Play and its co-conspirators' crimes had "the same or similar purposes, results, participants, victims, or methods of commission, [and] otherwise [were] interrelated by distinguishing characteristics," such that they were "not isolated events." United States v. Vernace, 811 F.3d 609, 615 (2d Cir. 2016) (internal quotation marks omitted). The government's proof on these points will focus on Full Play's involvement in the four schemes identified above, in which Full Play was a direct participant. Important proof of these schemes and their relatedness will be offered through, among other evidence, the bribe ledgers maintained by Full Play employee Santiago Peña and the testimony of, among others, Alejandro Burzaco.[2] Other evidence of the relatedness and continuity of the racketeering

---

[2] The government's proof of the non-racketeering conspiracy charges, including evidence as to the co-conspirators' relationships of trust and the origins of the Defendants' conspiratorial conduct, also will serve as proof of the charged racketeering conspiracy and corroboration of the testimony of cooperating witnesses. See United States v. Ashburn, No. 11-CR-303 (NGG), 2015 WL 588704, at *13 (E.D.N.Y. Feb. 11, 2015) (evidence that "provides background to the charged conspiracy, and helps to explain how the illegal relationship and mutual trust between participants in the crime . . . developed," is also "relevant and admissible at trial" (collecting cases)); see also United States v. Everett, 825 F.2d 658, 660 (2d Cir. 1987) (noting that other crimes evidence "has been consistently held admissible" to

activity will consist of Full Play's payment and promise of payment of bribes in connection with other soccer events.[3]

### III. Evidence Regarding Hernan Lopez and Co-Conspirator #1

The Indictment alleges that, in connection with the Copa Libertadores scheme, defendants Lopez and Martinez relied on the loyalty secured through the payment of bribes to certain CONMEBOL officials, including Co-Conspirator #1, to advance the business interests of Fox beyond the Copa Libertadores. (Ind. ¶ 74). Relatedly, the government intends to introduce evidence that Co-Conspirator #1 provided Lopez with confidential information, through Burzaco, regarding the amount Fox would have to bid to secure the rights to broadcast the 2018 and 2022 World Cups in the United States (see id.), and, in advance of the public announcement, that Fox had won the rights. The government also intends to introduce evidence that in late 2011, (1) Co-Conspirator #1 informed Lopez, again through Burzaco, that, going forward, he expected to collect a bribe of 10% of the contract price for any additional contracts he helped to secure for Fox, and (2) Lopez agreed to this arrangement provided that Fox would not have to pay Co-Conspirator #1 directly. The evidence will show that Lopez later attempted to make use of this arrangement in connection with efforts to secure the rights to broadcast in India the 2018 and 2022 World Cups. Because all of this is direct evidence of the conspiracy charges, the government respectfully moves for its admission as to all defendants.

"Where, as here, the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself." United States v. Eppolito, 543 F.3d 25, 47 (2d Cir. 2008) (internal quotation marks omitted). "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997). Thus, evidence is often admissible "to provide background for

---

corroborate testimony of cooperating witnesses who testify of their own involvement in crimes (citation omitted)).

[3] To provide further context for this filing, the government notes an important difference between the upcoming trial and the trial held in 2017. In advance of the 2017 trial, the government filed a motion to admit racketeering evidence in which it articulated certain limits on the government's proposed evidence but also moved to admit evidence of racketeering activity committed by co-conspirators not before the Court, which did not directly involve the trial defendants, all three of whom were former soccer officials and bribe recipients. See generally ECF Dkt. No. 622 (the "2017 Motion"). The racketeering activity addressed in the 2017 Motion involved conduct by Full Play (which was not before the Court), relating to, for example, "Full Play's bribes to both CONMEBOL and CONCACAF officials in connection with several soccer competitions," which were "highly probative of the relatedness of the acts within the racketeering pattern." Id. at 35. Here, with Full Play on trial, such evidence of Full Play's own racketeering activity is admissible as direct evidence of the charged crimes and poses no risk of undue prejudice.

the events alleged in the indictment" or "to enable the jury to understand the complete story of the crimes charged." United States v. Reifler, 446 F.3d 65, 91–92 (2d Cir. 2006) (internal quotation marks omitted).  Here, the evidence described above is relevant and admissible as direct evidence of the charged Copa Libertadores wire fraud and money laundering conspiracies, in that it shows, among other things, that Co-Conspirator #1 used his official position to benefit Fox based on bribes he received in connection with the Copa Libertadores contracts.  That Co-Conspirator #1 sought to arrange for additional bribe payments in exchange for further assistance to Fox is strong evidence of the conspiratorial relationship among Co-Conspirator #1, Burzaco, Lopez, and Martinez.

The evidence also is admissible pursuant to Rule 404(b) to "complete the story of the crimes charged," United States v. Williams, 205 F.3d 23, 33 (2d Cir. 2000) (citation omitted); accord United States v. Lebedev, 932 F.3d 40, 52 (2d Cir. 2020); to "help explain to the jury how the illegal relationship between the participants in the crime developed," Williams, 205 F.3d at 33–34 (citation omitted); and to explain "the mutual trust that existed between coconspirators," United States v. Rosa, 11 F.3d 315, 334 (2d Cir. 1993); accord United States v. Rosemond, 958 F.3d 111, 126 (2d Cir. 2020).  Similarly, the evidence is admissible to show lack of mistake and intent, in that repeated conversations between Burzaco and Lopez about the payment of bribes to soccer officials, including in the context of generating new business for Fox, helps to establish there was no misunderstanding as to the purpose of the bribe payments or the nature of Fox's relationship with those officials, including Co-Conspirator #1.  See, e.g., United States v. Dupree, 870 F.3d 62, 76 (2d Cir. 2017) (approving admission of similar uncharged acts probative of "defendants' knowledge" of the substantive objects of the conspiracy and "their intent to engage in the[] [substantive] acts"); United States v. Paulino, 445 F.3d 211, 221–23 (2d Cir. 2006) (same).

The Second Circuit "has long adopted an inclusionary approach to the admission of uncharged crime evidence, under which evidence of prior crimes, wrongs, or acts is admissible for any purpose other than to show a defendant's criminal propensity."  Paulino, 445 F.3d at 221 (internal quotation marks omitted).  Such evidence is admissible where it is relevant and offered for a proper purpose and where, under Rule 403's balancing test, "its probative value" is not "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  The Court has broad latitude in determining whether to admit evidence pursuant to Rule 404(b), and its ruling is reviewable only for abuse of discretion.  United States v. Miller, 116 F.3d 641, 682 (2d Cir. 1997).

Here, the proffered evidence is offered for a proper purpose, as discussed above, and there is no risk of unfair prejudice, much less risk that such prejudice could substantially outweigh the probative value of the evidence.  This is so primarily because the evidence does "not involve conduct any more sensational or disturbing than the crimes with which [the defendants have been] charged."  United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992) (internal quotation marks omitted); see also, e.g., United States v. Baez, 349 F.3d 90, 94 (2d Cir. 2003) (evidence of sixteen uncharged robberies admissible at trial of defendant charged with racketeering, racketeering conspiracy, and murder in aid of racketeering); Paulino, 445 F.3d at 223 (finding prior cocaine convictions admissible as proof that the defendant was aware

4

that substance in his closet was cocaine; observing that evidence does not "involve conduct more inflammatory than the charged crime[s]"). Indeed, this Court has already held, in the context of the 2017 Motion, that the proffered "evidence of bribery, wire fraud, and money laundering by [] co-conspirators" was admissible because it involved offenses "similar, if not identical, in terms of nature and severity, to the criminal conduct" charged directly against the trial defendants. United States v. Napout, No. 15-CR-252 (PKC), 2017 WL 4083571, at *10 (E.D.N.Y. Sept. 13, 2017).

IV. Conclusion

For the reasons set forth above, the government respectfully submits that the evidence described herein is admissible at trial.

Respectfully submitted,

BREON PEACE
United States Attorney

By:      /s/
Samuel P. Nitze
Patrick T. Hein
Kaitlin T. Farrell
Victor A. Zapana
Assistant U.S. Attorneys
(718) 254-7000

cc: Counsel of record (by ECF)
Clerk of Court (PKC) (by ECF)