SPN/PTH/KTF/VAZ
F.#2015R00747

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

       - against -                        Docket No. 15-CR-252 (S-3) (PKC)

FULL PLAY GROUP S.A., et al.,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

REPLY IN FURTHER SUPPORT OF THE
GOVERNMENT'S MOTION IN LIMINE TO
PRECLUDE CERTAIN EVIDENCE AT TRIAL

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Samuel P. Nitze
Patrick T. Hein
Kaitlin T. Farrell
Victor Zapana
Assistant U.S. Attorneys
    (Of Counsel)

The government respectfully submits this reply in further support of its motion in limine (the "Motion") to preclude the introduction of certain evidence and argument at trial and in response to arguments in opposition to the Motion filed by defendants Full Play Group, S.A. ("Full Play"), Hernan Lopez, and Carlos Martinez (the "Defendants"). See ECF Dkt. Nos. 1700 ("Mot."), 1719 ("Lopez & Martinez Opp'n"), 1722 ("Full Play Opp'n").

I.   The Court Should Grant the Government's Motion to Preclude Evidence or Argument About the Conduct, Motives, and Timing of the Government's Investigation

It appears from the Defendants' opposition briefs that the parties are largely, though not entirely, in agreement regarding the government's motion to preclude evidence or argument seeking to impugn the conduct, motives, and timing of the government's investigation. See Mot. at 10-14. The remaining points of disagreement are significant, however, and warrant entry of an order granting the Motion.

The government understands Lopez and Martinez to have agreed not to elicit testimony, introduce evidence, or make jury arguments designed to impugn the government's motives, timing, or good faith. Lopez & Martinez Opp'n at 4 ("[N]either Mr. Lopez nor Mr. Martinez intends to make . . . argument[s] . . . impugning the government's motives in front of the jury."). Full Play also recognizes that it "may be improper to introduce evidence concerning the Government's motives, timing, or conduct in an investigation" and that case law precludes defendants from "argu[ing] about the overall propriety of a government investigation or a law enforcement agent's state of mind during an investigation." Full Play Opp'n at 7.[1] Lopez and

---

[1] Full Play argues that the portion of the Motion seeking to preclude evidence impugning the government's conduct, motives, and timing is premature. Full Play Opp'n at 8. The argument is meritless. The purpose of a motion in limine is to address issues in advance of trial. For example, it is commonplace for government to move to preclude certain lines of cross-examination without knowing whether defense counsel will seek to carry out such cross-examination. The government often discloses arguable Giglio material and moves to preclude

Martinez oppose the motion only insofar as it seeks "to limit defense counsel from introducing evidence of, asking questions on cross-examination about, or making appropriate arguments regarding the evidence that the government did or did not collect during its investigation." Lopez & Martinez Opp'n at 2.

To be sure, the government does not seek an order precluding appropriate testimony or argument concerning the absence of particular types of evidence or argument that the absence of evidence can form the basis of reasonable doubt.[2] The defendants may well have a basis to ask a government witness if he or she sought, for instance, DNA or fingerprint evidence, bank records, video recordings, or some other category of evidence. The government also does not oppose the sorts of arguments endorsed in the cases cited in Lopez and Martinez's opposition brief at pages 2 and 5 to 6 – arguments that, for instance, one might have expected a different type of evidence than that adduced during the trial.

The government disagrees, however, with the Defendants to the extent they seek leave to impugn the government's choices over the course of its investigation – to suggest that decisions not to seek evidence from particular sources are indicative of bad faith, for example, or to urge (speculative) inferences that evidence favorable to the defense might have been found had the government only looked harder. To put a finer point on it, and by way of example, Lopez and Martinez have repeatedly suggested that the government should have obtained more information from cooperating witness Alejandro Burzaco – that the government, for instance, should have

---

regardless of whether the government knows in fact whether the defendant will seek admission of the material at trial. As indicated below, the government does not oppose any appropriate and record-supported argument regarding the results of the government's investigation.

[2] The government stands by the statements it made during the first trial, as quoted in Lopez and Martinez's opposition brief at page 4, and sees no inconsistency between those statements and the contents of the Motion.

2

searched all of Mr. Burzaco's devices, searched certain devices earlier, obtained access to his personal email accounts, and found relevant evidence that, Lopez and Martinez have speculated, was sure to exist in unexplored areas. See, e.g., Lopez & Martinez Mot. for Rule 17 Subpoena and Letter Rogatory, ECF Dkt. No. 1599, at 3-4; Lopez & Martinez Mot. for Rule 17 Subpoena, ECF Dkt. No. 1663. The Defendants have gone so far as to argue that the government purposefully turned from the truth – a basis for the Motion that goes unmentioned in their opposition briefs. See Mot. at 12 & n.2.

The government seeks an order precluding cross examination of witnesses, such as Burzaco, as to whether the government conducted certain searches or sought certain materials, e.g., searched witnesses' desk drawers or file cabinets, sought a warrant for personal email accounts, or searched all media devices. The answers to such questions are irrelevant both as to the charged offenses and as to impeachment. It would be equally inappropriate to ask questions designed to urge speculation that exculpatory evidence might exist in those cabinets, email accounts, or devices. Likewise, any arguments to the jury urging such speculation are inappropriate. The cases relied upon by the Defendants do not support the introduction of such evidence or argument. Full Play's cited cases, United States v. Demosthene, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004),[3] and United States v. Stewart, No. 03-CR-717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004), make clear that undermining the "credibility" of a witness by demonstrating his or her misstatements and falsehoods is fair game, but that eliciting the "details of the investigation's chronological development," challenging "the overall propriety of the

---

[3] Full Play notes that Demosthene was affirmed on appeal. See Full Play Opp'n at 7. More precisely, the defendant's conviction was affirmed, and the evidentiary issue about cross-examination was not examined. See 173 F. App'x 899 (2d Cir. 2006).

3

Government's investigation," and implying "prosecutorial bias against" a defendant are not, Demosthene, 334 F. Supp. 2d at 380; Stewart, 2004 WL 113506, at *1.

Lopez and Martinez point to cases that can be viewed as carving exceptions – in factual contexts radically different from the relevant context here – to the general principle that the government and its investigative techniques are not on trial. They invoke Kyles v. Whitley, 514 U.S. 419 (1995); United States v. Sager, 227 F.3d 1138 (9th Cir. 2000); and Bowen v. Maynard, 799 F.2d 593 (10th Cir. 1985), which allowed the admission of evidence related to the "conscientious" or "slovenly" nature of underlying "police work" on the grounds that it might help to demonstrate the "probative force" of certain other evidence "obtained" in "circumstances [that] raise a possibility of fraud," Kyles, 514 U.S. at 446 n.15. The evidence at issue in Sager, for example, was testimony of a law-enforcement witness. Sager noted that defense counsel should have had an opportunity to ask questions of that witness about "possible defects in [his] investigation" after he had made a statement at trial concerning his own investigation that contradicted what he had told two separate grand juries. 227 F.3d at 1142-43, 1145-46; see also id. at 1146 (noting that the witness' testimony "uncovered a highly damaging flaw in [the witness'] several accounts" of a part of his investigation). Sager's holding that the district court erred in instructing the jury not to "grade" the government's investigation was based on predicate facts not present here, and directly relied on the principle, articulated in Kyles, that "'[w]hen ... the probative force of evidence depends on the circumstances in which it was obtained and those circumstances raise a possibility of fraud, indications of conscientious police work will enhance probative force and slovenly work will diminish it.'" Id. at 1145 (quoting Kyles, 514 U.S. at 446 n.15).

Kyles and Bowen – both Brady cases – involved state murder trials in which the defenses focused in part on alternate suspects who might have committed the charged offenses.

4

Kyles considered one suspect's numerous contradictory statements to law-enforcement agents (and other individuals) in a case where the prosecution argued at trial that the suspect "was essential to its investigation and, indeed, 'made the case' against" the defendant. 514 U.S. at 428-30, 445. Kyles held that evidence relating to the quality of the government's investigation, in particular evidence of failure to pursue "pointers towards" another suspect's guilt, was relevant to possible defenses pointing to the guilt of that suspect, including that he may have planted evidence to frame the defendant. Id. at 447-48. Bowen involved a suspect who had been abandoned as a subject of the investigation and a defendant who had twelve alibi witnesses. See 799 F.2d at 599-601, 610-13. Both individuals were white men of similar ages, weights, heights, and hair color. See id. at 610. Essential to the prosecution – as admitted by the lead prosecutor during a habeas proceeding – was the testimony of two identification witnesses who participated in what the Tenth Circuit described as "frail[]" law-enforcement identification procedures. Id. at 610-11. The Tenth Circuit noted, among other things, that the suspect, a police lieutenant, "was never put in a live lineup" before the identification witnesses even though the defendant was placed in such a lineup. Id. at 598, 611, 613. The Tenth Circuit also noted the self-evident potential for law-enforcement bias. See id. at 613 ("[A] defense lawyer of less than heroic skill could have theorized that the State found it easier to charge an admitted gambler and ne'er-do-well rather than a police officer, even an allegedly corrupt one.").

It is telling that Lopez and Martinez rely on cases so different from this one. Against the backdrop of these cases, the government notes that underlying the government's Motion to preclude the evidence and argument at issue are problems of relevance and prejudice under Federal Rules of Evidence 401 and 403. That is, the reason it generally is not appropriate to adduce such evidence and advance such arguments is that they are irrelevant to the matter at

5

hand and risk confusing the jury or inviting speculation or nullification. The evidence at issue in the cases relied on by the defendants was relevant based on the particular contexts of the charged offenses and related investigations. The Motion here addresses testimony and argument that is not relevant. For example, here there is no "showing that . . . alleged misconduct by the government" – such as the contradictory statements of a law-enforcement agent in <u>Sager</u>, evidence of an investigation significantly shaped by a clear suspect in <u>Kyles</u>, or the failure to probe weak identification evidence in light of facially plausible law-enforcement bias and a clear alternative law-enforcement suspect in <u>Bowen</u> – "would tend to make particular evidence offered at trial . . . less reliable, and therefore, less convincing." <u>United States v. Dupree</u>, 833 F. Supp. 2d 255, 271-72 (E.D.N.Y. 2011), <u>judgment vacated on other grounds</u>, 706 F.3d 131 (2d Cir. 2013). Because the Defendants fail to make any showing that purported government misconduct has made evidence less reliable in this case, the Defendants should be precluded from attempting to impugn the government's investigative choices.

Accordingly, this Court should grant the government's Motion to preclude evidence or arguments designed to impugn the conduct, motives, or timing of the investigation.

II. The Court Should Grant the Government's Motion to
<u>Preclude Evidence or Argument Concerning Foreign Law</u>

In its Motion, the government also sought preclusion of evidence, including expert testimony, relating to foreign law. <u>See</u> Mot. at 3-10. As noted above, Lopez and Martinez do not challenge this part of the Motion. Because Full Play's arguments in opposition lack merit, this Court should grant the government's request.

Because the government and Full Play filed dueling motions <u>in limine</u> on the same subject on the same date – the government's to preclude foreign-law evidence, Full Play's to admit – with oppositions and now replies following simultaneously, the briefs have in a sense slipped

6

past each other, as if ships passing in the night. The arguments advanced in the government's opposition to Full Play's motion to a degree anticipate arguments now raised in Full Play's opposition to the government's Motion, reducing the need for a reply. See Gov't Opp'n, ECF Dkt. No. 1720, at 20-24. The government thus has only the following brief points to add to arguments already made.

First, the government reiterates the central point that whether commercial bribery is criminalized in foreign jurisdictions is irrelevant – or barely relevant – to the case at hand for the reasons stated by this Court and Second Circuit, reasoning Full Play does not address except to argue as though the relevant holdings were favorable to their position instead of recognizing that the holdings defeat their position.

Second, Full Play has yet to address its own expert's views that fiduciary duties are recognized in the relevant countries, or that the Paraguay court system ordered Leoz extradited after finding that his conduct – indistinguishable from the conduct alleged in the pending charges for purposes of this argument – was criminal in Paraguay. In any event, even if the countries referenced in Full Play's briefing did not recognize analogues of fiduciary duties, the government's arguments, and the reasoning of this Court and Court of Appeals, would still stand.

Third, Full Play continues to suggest that the government's theory is that Full Play owed a fiduciary duty – perhaps to the federations – and that the charged conduct entails a violation of Full Play's duty. This is not the theory of the government's case, which – as noted, among other places, in the government's opposition to Full Play's December 3, 2021, motion for certain Rule 17 subpoenas and letters rogatory, see Gov't Opp'n, ECF Dkt. No. 1673, at 4-5 – is that Full Play participated in bribery schemes involving the payment of bribes and kickbacks to soccer officials in violation of those officials' duties to soccer organizations. These duties are based on

relationships of trust and agency and not grounded in "local" law. See United States v. Full Play Grp., S.A., No. 15-CR-252 (PKC), 2021 WL 5038765, at *8 (E.D.N.Y. Oct. 29, 2021) (citing United States v. Bahel, 662 F.3d 610, 633 (2d Cir. 2011)); see also United States v. Lemire, 720 F.2d 1327, 1335-36 (D.C. Cir. 1983) (noting prior "judicial consensus" that fiduciary duties "may stem" not from federal or state law but rather "from an employment relationship of the sort that imposes discretion").

Finally, as argued repeatedly, whatever probative value the proffered evidence might have is swamped by the risk of juror confusion, delay, and related prejudice. Full Play only highlights the problem by suggesting that the issue can be helped or avoided with a jury instruction to the effect that "any evidence or testimony regarding foreign law is to be used for the narrow purpose of determining whether, under foreign law, an acceptance of a bribe violates a fiduciary duty whose breach is criminal." Full Play Opp'n at 5. The government does not understand what that instruction means, and it is intimately familiar with the facts and law relevant to this case. In any event, as noted in various filings and court holdings, the government is prosecuting violations of domestic laws against the background principle that ignorance of the law is no excuse. In addition, the proposed instruction ignores the enormous complexity and confusion that would arise from determining what the state of foreign law is on the relevant points – an issue that should not be left to the jury in any event, cf. Fed. R. Crim. P. 26.1 – and understates the problem of isolating the relevance of the proffered evidence. For these, and the additional reasons stated in the government's Motion and opposition to Full Play's motion in limine, and by this Court and the Second Circuit, the government's Motion should be granted.

CONCLUSION

For the foregoing reasons, and those set forth in the Motion, the Court should grant the government's motion in limine in its entirety.

Dated:   Brooklyn, New York
         March 4, 2022

                                            Respectfully submitted,

                                            BREON PEACE
                                            UNITED STATES ATTORNEY
                                            Eastern District of New York
                                            271 Cadman Plaza East
                                            Brooklyn, New York 11201

                                    By:          /s/
                                            Samuel P. Nitze
                                            Patrick T. Hein
                                            Kaitlin T. Farrell
                                            Victor Zapana
                                            Assistant United States Attorneys
                                            (718) 254-7000